Robert C. PIERCE, Plaintiff
Below, Appellant,

v.

INTERNATIONAL INSURANCE COM-
PANY OF ILLINOIS, Defendant
Below, Appellee.

No. 112, 1995.

Supreme Court of Delaware.

Submitted: Dec. 7, 1995.
Decided: Jan. 23, 1996.
Revised: Jan. 31, 1996.

Sidney Balick (argued), and Gregory A. Morris, Sidney Balick & Associates, Wilmington, for Appellant.

William J. Cattie, III, Heckler & Cattie, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court en banc.

WALSH, Justice:

In this case we address for the first time the question of whether an employee's claim for bad faith against a workers' compensation insurance carrier is cognizable under Delaware law. The claim was brought by Robert C. Pierce ("Pierce"), who was injured in the course of his employment and sought compensation from his employer's workers' compensation carrier. The insurer agreed to settle with Pierce eleven months after his injury.

Pierce brought suit against the insurer, International Insurance Company of Illinois ("International"), in Superior Court, alleging that it had delayed paying his claim in bad faith. The Superior Court granted International's motion for summary judgment, finding that the Delaware Workers' Compensation Law, 19 *Del.C.* §§ 2101–2397 ("WCL"), provided the sole remedy for Pierce's claim.

We conclude, however, that Pierce's claim for bad faith delay does not merge with his original work related injury and therefore his claim is not precluded by the WCL. In addition, we hold that workers may bring suit against workers' compensation insurers for breach of the covenant of good faith as third-party beneficiaries of contracts of insurance between employers and insurers. We further conclude that since the covenant of good faith does not exist apart from the underlying contract, only contract remedies are available for breach of the covenant.

Accordingly, the judgment of the Superior Court is reversed.

I.

Pierce was injured while lifting a manhole cover while an employee of Glen Moore Excavating Co. ("Glen Moore") on April 6, 1989. International insured Glen Moore for workers' compensation claims at this time. Because of his injury, Pierce was seen by his family physician on April 8, 1989. Upon the recommendation of that physician, Pierce consulted a surgeon and underwent back surgery on June 7, 1989.

On April 24, 1989, Glen Moore erroneously filed a First Report of Injury with the Pennsylvania Accident Board. A second report was properly filed with the Delaware Industrial Accident Board ("Board") on July 7, 1989. On July 26, 1989, Pierce filed his Petition to Determine Compensation with the Board. A teleconference was scheduled for August 24, 1989 and a pre-trial conference for September 15, 1989.

After several exchanges of correspondence between counsel regarding the possibility of a prior back injury, Pierce was examined by Dr. Edelsohn, an independent medical examiner, on February 6, 1990. Two days later Dr. Edelsohn issued a report causally linking Pierce's herniated disks to the work accident. The report acknowledged that Pierce would not be able to return to work as a laborer and operator of heavy equipment.

On March 6, 1990, International offered to pay compensation for total disability from the date of the accident through February 6, 1990. Pierce rejected this offer. Then, on March 26, 1990, International offered to pay Pierce compensation for total disability beyond February 6, 1990, and on March 30, 1990, a settlement was reached.

## II.

On October 17, 1991, Pierce filed suit against International in Superior Court, alleging that International had "intentionally, systematically, and unjustifiably delayed, for more than eleven months, compensating [Pierce] for an industrial accident that occurred on April 6, 1989." Pierce alleged that this conduct violated the WCL and International's duties of good faith and fair dealing. Specifically, Pierce contended that he suffered emotional distress, humiliation, embarrassment and economic hardship as the result of International's delay.

After Pierce filed the action in Superior Court, International moved for summary judgment on the ground that Pierce's complaint failed to state a cause of action. The Superior Court ruled that an insurance carrier enjoys the same immunity as an employer under the WCL, and thus Pierce's claim was precluded by 19 *Del.C.* § 2304, which provides that:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and *to the exclusion of all other rights and remedies.*

(emphasis supplied).

In reaching this conclusion, the Superior Court declined to follow the decision in *Correa v. Pennsylvania Mfrs. Ass'n Ins. Co.,* D.Del., 618 F.Supp. 915 (1985), relied upon by Pierce. The Superior Court was of the view that *Correa* was inconsistent with subsequent State court decisions which reaffirmed the immunity enjoyed by insurance carriers under 19 *Del.C.* § 2304, *Mergenthaler v. Asbestos Corp. of Am.,* Del.Super., 534 A.2d 281 (1987) and *Corrado Bros. v. Twin City Fire Ins. Co.,* Del.Supr., 562 A.2d 1188 (1989).

On appeal to this Court, Pierce argues that the Superior Court erred in holding that his claim was barred by the WCL. Specifically, Pierce contends that § 2304 preempts only injuries sustained "in the course of employ-

ment," while his action seeks recovery premised on facts occurring outside the employment context. Additionally, Pierce argues that Delaware should recognize the right of a worker to bring a bad faith claim against a workers' compensation insurance carrier.

International counters that Pierce's claim is precluded by the WCL. Section 2301(10) of Title 19 provides that insurers are to be treated the same as employers under the law to the extent practicable, and thus, the shield of § 2304 is equally applicable to Pierce's claim against International. International also maintains that adequate administrative remedies exist if Pierce's allegations are true. Finally, International insists that the recognition of an action against a workers' compensation insurance carrier for bad faith would be inconsistent with established Delaware precedents. In particular, International argues that imposition of such a duty on insurers would create a conflict with their obligation to protect the interests of their employer-insureds when settling with third parties.

## III.

■■■ In assessing the claims of the parties, we begin by noting that the Superior Court decided this matter at the summary judgment stage. The role of the Superior Court at this juncture is to view the evidence in the light most favorable to the non-moving party. *Merrill v. Crothall–American, Inc.,* Del.Supr., 606 A.2d 96, 99 (1992). If the court decides that there are no material factual disputes, then the issue is appropriate for summary judgment. *Id.* It is apparent from the opinion of the Superior Court that any factual disputes which may have existed between the parties were immaterial to its ruling.

■■ In this case, the Superior Court fashioned a discrete legal ruling in concluding that Pierce's claim is precluded by the WCL. "This Court examines *de novo* questions of law decided by a lower court and we thus exercise plenary review." *Id.* Under our standard of plenary review, we are free to make our own determination whether Pierce's claim is barred by the WCL and is

otherwise legally sufficient. *Arnold v. Society for Sav. Bancorp, Inc.*, Del.Supr., 650 A.2d 1270, 1287 n. 30 (1994).

■ Our review of the Superior Court decision begins with the examination of the WCL to determine if it bars Pierce's suit. Then, assuming such a suit is not precluded by the WCL, we must next determine if, given existing common law principles, Pierce has stated a claim upon which relief can be granted.

## IV.

Initially, we address the Superior Court's rejection of the reasoning in *Correa v. Pennsylvania Mfrs. Ass'n Ins. Co.*, D.Del., 618 F.Supp. 915 (1985), because of the similarity of the issues presented in that case. The U.S. District Court for the District of Delaware addressed the issues, grounded on State law, without the benefit of a controlling decision of this Court. Since the District Court's decision was predictive of Delaware law, the Superior Court, correctly, did not view itself as constrained to follow *Correa.* While *Correa* involved the factual difference of prior recognition of liability on the part of the insurer and its subsequent delay or refusal to pay, we think that its rationale for positing liability on the carrier is equally applicable here.

In *Correa,* Judge Stapleton addressed the question whether an employee was limited to the remedies provided by the WCL if an insurer "unreasonably, intentionally, wrongfully, and maliciously failed and refused to pay compensable medical bills in breach of its duty of good faith and fair dealing owed to plaintiffs and ... committed an outrage giving rise to a common law claim for intentional infliction of emotional distress." 618 F.Supp. at 922 (internal quotations omitted). The court initially noted that the plaintiffs' injuries were "not components of the physical injuries which originally gave rise to plaintiffs' worker's compensation claims" and therefore not precluded by the WCL. 618 F.Supp. at 923.

The court then turned to what it called a "more difficult question,"—whether "a worker's compensation insurance carrier owes claimants seeking benefits under a worker's compensation insurance policy a duty of good faith and fair dealing." *Id.* Judge Stapleton held that "[r]ecognizing a duty of good faith and fair dealing owed by worker's compensation insurance carriers to claimant employees both reflects the special status of employees under the worker's compensation statute and serves the compelling interest of meeting the needs of injured employees without delay." *Id.* at 924. The court correctly noted that the purpose of the WCL is to provide for the speedy compensation of injured employees. *Id.* at 924 & n. 9. In addition, employees are the intended beneficiaries of the insurance contracts and thus able to enforce their rights under these contracts, even though not in privity with the insurance carrier. *Id.* at 924.

Although the Superior Court found *Correa*'s reasoning inapplicable due to its factual dissimilarity, our decision in *Tackett v. State Farm Fire & Cas. Ins. Co.*, Del.Supr., 653 A.2d 254 (1995), suggests that the factual differences between the claim in *Correa* and Pierce's claim are inconsequential. The Superior Court found it important that the delay in *Correa* had occurred after liability had already been acknowledged. However, *Tackett* makes clear that the insurer is subject to a duty of good faith at two significant stages in the processing of a claim. *Id.* at 265–66. The first stage includes the initial determination of coverage, which is disputed here, while the second involves the determination of the amount of compensation and payment thereof after some level of liability of the insurer has been acknowledged, which was the situation addressed in *Correa. Id.*

Although *Tackett* addressed a first party dispute, *i.e.*, between insurer and insured, it recognized a duty of good faith and fair dealing inhering in every insurance contract, and noted that these obligations may arise at various times during the processing of claims. *Correa* correctly recognized that this duty extends to employees who are third party beneficiaries of workers' compensation insurance contracts. 618 F.Supp. at 924.

## V.

We find the reasoning in the *Correa* opinion persuasive but independently set forth

our reasoning and conclusions regarding the availability of a cause of action for bad faith conduct on the part of a workers' compensation insurer.

International argues that exclusivity is a matter of legislative intent and thus the starting point is the text of the statute itself. *See Spielberg v. State,* Del.Supr., 558 A.2d 291, 293 (1989). In general, the exclusivity provision of 19 *Del.C.* § 2304 limits recovery for personal injuries "arising out of and in the course of employment." Section 2301(10) extends this provisions to the employer's insurer "as far as practicable." However, § 2301(15) explains that "personal injury" as used in § 2304 is limited to those injuries occurring on the employer's premises or while the employee is elsewhere engaged in his employer's business.

◼ Our previous decisional law has broadly interpreted the exclusivity provisions of the WCL. "If the action is essentially a recovery for physical injury, it is barred even if cast in the form of a non-physical tort." *Nutt v. A.C. & S., Inc.,* Del.Super., 466 A.2d 18, 22 (1983) (citation omitted), *aff'd, Mergenthaler v. Asbestos Corp. of Am.,* Del.Supr., 480 A.2d 647 (1984); *see Correa,* 618 F.Supp. at 923. Even otherwise independent claims have been held to merge with the employment related injury in some circumstances, *see, e.g., Kofron v. Amoco Chemicals Corp.,* Del.Supr., 441 A.2d 226, 231 (1982); *Mergenthaler,* 480 A.2d at 650; *Nutt,* 466 A.2d at 22. Where, however, as here, the injury alleged by the employee arose *after* the work-related accident, the provisions of 19 *Del.C.* § 2304 are inapplicable, *see Nutt,* 466 A.2d at 22; *Mergenthaler,* 480 A.2d at 650. In this case, the Superior Court noted that "where the employer engages in a distinct act subsequent to the personal injury which is non-physical in nature there could be recovery." *Pierce v. International Ins. Co. of Ill.,* Del.Super., C.A. No. 91C–10–150, 1995 WL 158992. Indeed, Pierce has alleged conduct on the part of International taking place after the filing of his workers' compensation claim. This temporal difference, rather than the non-physical nature of the harm, is significant and negates the argument that the legislative intention was for the exclusivity bar to apply.

## VI.

### A.

◼ Since we have determined that the WCL does not bar Pierce's claim, we must now address the question of whether the claim presents a cognizable, free-standing cause of action. Pierce alleges that he was injured by International's bad faith delay in recognizing its liability to Pierce under its workers' compensation contract with his employer, Glen Moore. Thus, the issue presented is whether International owes any duty to Pierce, and if so, the elements of that duty.

International argues that no such duty is owed to Pierce because Pierce's position is analogous to that of a third-party claimant suing an insurer in tort. While the insurer owes a duty to the insured to settle within the policy limits, *inter alia,* International points out that this Court has never recognized a duty to a third-party plaintiff. *See Tackett,* 653 A.2d at 264. The analogy to a conventional insurance claim is limited, however. The payment of benefits, where due to employees, such as Pierce, was clearly within the contemplation of International and Glen Moore when they entered into the contract of workers' compensation insurance. Although, Glen Moore was motivated by its own self-interest in providing a liability protection fund, the intended beneficiaries of that fund were its employees.

An examination of the workers' compensation scheme and contract principles shows that Pierce is indeed a third-party beneficiary. The WCL requires that employers provide workers' compensation insurance for their employees. 19 *Del.C.* § 2371. Thus, Pierce is the third party beneficiary of the contract between Glen Moore and International by statutory mandate, and as such can assert rights directly against International arising out of this contract. *Triple C Railcar Service, Inc. v. City of Wilmington,* Del. Supr., 630 A.2d 629, 633 (1993); *see also Restatement (Second) of Contracts* § 304; 11

Mark S. Rhodes, *Couch on Insurance (Second)* § 44:206 (1982).

Our decisions have recognized that the policy of the WCL is to provide for a quick resolution of workers' compensation claims without resort to costly and uncertain litigation. *New Castle County v. Goodman,* Del. Supr., 461 A.2d 1012, 1014 (1983). "Since the payment of worker's compensation is of primary significance to the Workmen's Compensation Law, the insurer's obligation with respect to such payments must be applied as strictly as that of the employer." *Mergenthaler v. Asbestos Corp. of Am.,* Del.Super., 534 A.2d 281, 283 (1987). To prevent the circumvention or exploitation of the system, an employee must be afforded standing to enforce his rights arising under the WCL and the insurance contract between his employer and its insurer.[1]

The conclusion that Pierce can enforce rights under the insurance contract begs the question of which rights he can enforce. Clearly Pierce has the right to payment as set forth explicitly in the contract.[2] *See Casson v. Nationwide Ins. Co.,* Del.Super., 455 A.2d 361, 365 (1982). In addition, Pierce has the right not to be deprived of the essential benefits of the contract, which include income security and a reduction in uncertainty. *See id.*

So that the reasonable expectations[3] of parties to a contract will not be defeated, we have held that a duty of good faith and fair dealing attaches to every contract, and this duty cannot be disclaimed. *Merrill v. Crot-*

*hall–American, Inc.,* Del.Supr., 606 A.2d 96, 101 (1992); *Blish v. Thompson Automatic Arms Corp.,* Del.Supr., 64 A.2d 581, 597 (1948); *see also Restatement (Second) of Contracts* § 205; 3A *Corbin on Contracts* § 654A (1994). This duty also extends to contracts of insurance. *See Corrado Bros. v. Twin City Fire Ins. Co.,* Del.Supr., 562 A.2d 1188, 1192 (1989). Although *Corrado Bros.* recognized an insurer's duty of good faith in a dispute between a workers' compensation insurer and an employer, this duty also extends to employees, who are beneficiaries of the insurance company's promise to pay. *Restatement (Second) of Contracts* § 304 (intended beneficiary may enforce contractual duties of promisor).[4]

The obligation of good faith "is the obligation to preserve the spirit of the bargain rather than the letter, the adherence to substance rather than form." 3A *Corbin on Contracts* § 654A (1994). Since unreasonable delay in payment defeats an essential goal of the WCL, *i.e.,* financial security, an insurer violates the duty of good faith and fair dealing when it delays or terminates payment of a claim in bad faith. *Tackett,* 653 A.2d at 264. Consequently, this duty would create liability on the part of International for unreasonable delay in recognizing Pierce's rightful claim.[5]

### B.

■ Since International owed a duty to Pierce to process his claim in good faith, the question of remedy arises. Because liability is grounded in the duty of good faith and fair

---

1. The Board's power to impose sanctions upon a carrier for non-payment or late payment of a claim under 19 *Del.C.* §§ 2362 and 2386 provides no remedy to the employee since such sanctions are limited to fines payable to the Second Injury Fund or the State Treasurer.

2. A claim for payment for injury under the terms of the contract, standing alone, is properly heard, in the first instance, before the Industrial Accident Board and not in the Superior Court. 19 *Del.C.* § 2121(a).

3. In the context of enforcement of a contract by a third-party beneficiary under the statutory scheme of the WCL, "reasonable expectations" must find meaning in the purposes of the WCL, as well as the expectations of the parties to the contract.

4. In addition, Delaware law allows plaintiffs to bring bad faith claims against insurers in other contexts. *See, e.g., Tackett,* 653 A.2d at 264 (delay in paying underinsured motorist benefits); *Corrado Bros.,* 562 A.2d at 1191 (insurer must settle workers' compensation claim in good faith when retrospective premium will be imposed).

5. Liability for this type of behavior on the part of a workers' compensation insurance carrier has been recognized in many jurisdictions. Michael A. Rosenhouse, Annotation, *Tort Liability of Worker's Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due,* 8 A.L.R.4th 902 (1981).

dealing, we address this issue by examining the origin of this duty. In addition, whether or not this action sounds in contract or tort will have important consequences for the availability of damages for emotional distress and punitive damages.

This Court has indicated that, absent some relationship of trust and confidence, contract principles govern actions on insurance contracts. *Tackett,* 653 A.2d at 264–65; *see also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 216–18, 105 S.Ct. 1904, 1913–15, 85 L.Ed.2d 206 (1985) (analyzing Wisconsin "tort of bad faith" and concluding that this tort is essentially a "way to plead a certain kind of contract violation"); *but see Stafford v. Westchester Fire Ins. Co.,* Alaska Supr., 526 P.2d 37 (1974) (holding that tort cause of action arises for workers' compensation insurer's intentional nonpayment of benefits), *overruled on other grounds by Cooper v. Argonaut Ins. Cos.,* Alaska Supr., 556 P.2d 525 (1976). Relationships of trust have been held to arise along with certain professional relationships, such as that between an attorney and a client. *Cummings v. Pinder,* Del. Supr., 574 A.2d 843, 845 (1990). No such fiduciary relationship exists under the facts of this case and we see no reason to follow those courts which allow recovery in tort for a breach of the duty of good faith and fair dealing associated with a workers' compensation insurance contract. *See Tackett,* 653 A.2d at 264; *Corrado Bros.,* 562 A.2d at 1192; *Beck v. Farmers Ins. Exch.,* Utah Supr., 701 P.2d 795, 798–99 (1985). Thus, we conclude that the claim here sounds only in contract.[6]

### C.

■ The plaintiff in a contract action is normally limited to damages for breach and those consequential damages that were reasonably foreseeable at the time the contract was made. *Tackett,* 653 A.2d at 264–65 (citing *Hadley v. Baxendale,* 156 Eng.Rep. 145 (1845)). This rule has traditionally excluded recovery for emotional distress for breach of contract which was unaccompanied by physical injury. *Tackett,* 653 A.2d at 265. Any recovery for emotional distress without ac-

companying physical injury must be based in tort law, *e.g.,* the intentional infliction of emotional distress. *Nutt,* 466 A.2d at 22; *see supra* note 6. Thus, damages for emotional distress do not arise from a breach of the duty of good faith in the workers' compensation context.

### D.

■ While damages for emotional distress are precluded, punitive damages may be available in the context of a contract action if the denial of coverage is wilful or malicious. *Tackett,* 653 A.2d at 266. In some cases, the breach of a contract will involve conduct which can be termed wilful. *Reiver v. Murdoch & Walsh, P.A.,* D.Del., 625 F.Supp. 998, 1015 (1985). However, Delaware jurisprudence has set limits on what constitutes conduct that is so reprehensible as to provide a basis for a punitive damage award. *See Casson v. Nationwide Ins. Co.,* Del.Super., 455 A.2d 361, 369 (1982) (no punitive damages if party believed that meritorious defense existed); *Jardel Co., Inc. v. Hughes,* Del.Supr., 523 A.2d 518, 529 (1987) (no punitive damages for actions for breach occasioned only by negligence); *Reiver,* 625 F.Supp. at 1015 (surveying Delaware cases).

■ As noted in *Tackett,* the taking of an unreasonable or unjustified stances by an insurer, standing alone, will not justify the imposition of punitive damages. 653 A.2d at 266 (holding that a "get tough" attitude towards claim processing may evidence bad faith, but will not support punitive damages). However, when the bad faith actions of an insurer are taken with a reckless indifference or malice toward the plight of the injured employee, punitive damages are justified. *See id.* (citing *Jardel,* 523 A.2d at 529).

### VII.

In conclusion, we hold that the Superior Court erred when it found that Pierce's claim for bad faith delay was barred by the WCL. In addition, we find that Pierce has standing to assert a bad faith claim against International arising *ex contractu,* even though Pierce himself is not in privity of contract

---

6. We note that in some cases a breach of contract may accompany an independent tort, such as intentional infliction of emotional distress,

*Cummings,* 574 A.2d at 845, or fraud, *see Beck,* 701 P.2d at 800 n. 3.

with International. Finally, we hold that an action for a breach of the covenant of good faith does not normally allow recovery for emotional distress. However, punitive damages may be allowable if the requisite wilful disregard for the interests of the injured employee is found. We must emphasize that we express no opinion as to whether Pierce will be able to prove any of these claims since the factual record was not fully developed below. In granting summary judgment in favor of International, the Superior Court did not address the alternative basis for summary judgment advanced by International: whether the evidence viewed in a light most favorable to Pierce shows that the delay in making payments was clearly without any reasonable justification. Similarly, we do not consider whether the record before the Superior Court provides a factual predicate or sufficient dispute of material facts to support a bad faith claim. Our holding today is simply a recognition that, under Delaware law, a bad faith claim is not precluded by the WCL and is otherwise cognizable under common law contract principles.

Accordingly, the judgment of the Superior Court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.