**Sandra W. THURSTON, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation, Defendant.**

**No. Civ. A. 97–31 MMS.**

United States District Court,
D. Delaware.

July 17, 1998.

James J. Woods, Jr., Connolly, Bove, Lodge & Hutz, Wilmington, DE, for plaintiff.

Nancy E. Chrissinger, Chrissinger & Baumberger, Wilmington, DE, for defendant.

### OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### Introduction

Plaintiff Sandra Thurston ("Thurston") filed a claim against Liberty Mutual Insurance Co. ("Liberty") on January 15, 1997, alleging Liberty breached its duty of good faith and fair dealing in responding to her worker's compensation claim, which arose out of an accident that occurred on October 21, 1993. More specifically, Thurston alleged Liberty breached its duty by failing to provide timely and adequate compensation for treatment and by interfering with her relationship with a physician. Thurston seeks compensatory damages for her severe emotional distress and concomitant physical symptoms, as well as punitive damages. On January 20, 1998, Liberty filed a motion for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, diversity jurisdiction. For the reasons which follow, defendant's motion will be granted in part and denied in part.

### Standard of Review

Under the Federal Rules of Civil Procedure, the Court shall grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. *See id.* When considering a motion for summary judgment, the Court must "view all facts and inferences in the light most favorable to the party opposing the motion." *Stephens v. Kerrigan,* 122 F.3d 171, 176–177 (3d Cir.1997). The Supreme Court has clarified that the moving party must "bear the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a demonstration has been made, however, the nonmoving party must go beyond the pleadings and, based on the same types of evidence, must demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* 477 U.S. at 324, 106 S.Ct. 2548. *See also Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (stating that a non-moving party must "adduce more than a scintilla of evidence in its favor ... and cannot simply reassert factually unsupported allegations contained in its pleadings").

### Statement of Facts

On October 21, 1993, plaintiff, a science teacher, fell off of a ladder while hanging a

mural at school. As a result of this fall, plaintiff sustained serious injuries to her right elbow and wrist and less serious injuries to one of her ankles. As a result of the injuries to her arm, plaintiff proceeded to undergo significant medical treatment, including but not limited to four surgeries (including one that required transplanting part of one knee to her arm, leading to a damaged nerve in her knee), physical therapy and multiple, long-term medications. Unfortunately, her condition did not improve and she developed a chronic pain syndrome known as Complex Regional Pain Syndrome ("CRPS") or Reflex Sympathetic Dystrophy ("RSD"). The permanent disability rating for her arm was determined to be 95 percent. Over the course of her treatment, plaintiff began to suffer from CRPS in her legs as well.

During plaintiff's treatment, defendant did not pay all of plaintiff's bills within the required 30 days of when the bills were sent for payment. Defendant also refused to pay some of the bills at all, asserting in most cases either that the medical service rendered was for a condition not caused by plaintiff's work related injury or that, per evaluation by an independent medical examiner, the treatment was not necessary. Moreover, at one point during plaintiff's treatment with her orthopedic surgeon, a nurse assigned to plaintiff by the insurance company erroneously told the surgeon that plaintiff was planning on filing a malpractice claim against the doctor. This information altered how the doctor responded personally to the plaintiff. Soon after this false information was transmitted to the surgeon, he referred plaintiff to other doctors.

Plaintiff's dealings with the insurance company, the problems associated with obtaining reimbursement for the medical services and finding alternate means of paying bills, and the experience with the nurse who misinformed the doctor about plaintiff's intentions have caused plaintiff severe emotional distress. This distress has caused plaintiff various problems, including depression, sleeplessness, anxiety, vomiting and gastric distress.

### Discussion

Defendant first argues plaintiff cannot pursue a claim for defendant's failure to follow the strictures of Delaware's workers' compensation law because she has not requested a hearing by the Industrial Accident Board ("the Board") to review the merits of her claim. Moreover, defendant argues there is no record evidence of bills untimely paid or denied prior to the filing of the lawsuit. Further, there is no genuine dispute over whether the denial of any bills was reasonable. Defendant also asserts plaintiff cannot, on a contract claim, pursue compensatory damages based on emotional distress. Finally, defendant avers plaintiff cannot establish punitive damages as a matter of law.

Plaintiff contends the record supports the existence of delays in payment as well as denials of compensation prior to the filing of the lawsuit and that no Board review is necessary. Plaintiff also argues she has presented physical injuries as well as emotional distress, which provide sufficient grounds for compensatory damages. Finally, plaintiff asserts the record supports a claim of punitive damages.

### I. Breach of the Duty of Good Faith and Fair Dealing Claim

The purpose of the workers' compensation law is "to provide for the speedy compensation of injured employees." *Pierce v. International Ins. Co. of Ill.*, 671 A.2d 1361, 1364 (Del.1996). Because employees are the intended beneficiaries of workers' compensation contracts between insurance carriers and employers, employees are able to enforce the contracts even though the workers are not in privity with the carriers. *See id.* The rights an employee can enforce include the right to payment as set forth in the contract and the right "not to be deprived of the essential benefits of the contract, which include income security and a reduction in uncertainty." *Id.* 671 A.2d at 1366. Further, to ensure the "reasonable expectations of [the] parties" are satisfied,[1]

---

1. The reasonable expectations of the parties "must find meaning in the purposes of the [workers' compensation law,] as well as the expectations of the parties to the contract." *Pierce,* 671 A.2d at 1366 n. 3.

the carrier's contractual obligations to an employee include a duty of good faith and fair dealing. *Id.*

### A. The Exclusive Province of the Board

■ Defendant argues plaintiff is barred from suit because she must pursue her complaint under the Delaware's workers' compensation statute by seeking a hearing before the Board. Delaware's workers' compensation law requires that an employee resolve disputes about compensation by petitioning the Board to make a determination regarding the claim. *See* D.I. 38 at 142;[2] 19 Del. C. Ann. § 2346 (1997).[3] Further, the law states that, except where specifically provided, the workers' compensation statutes shall provide the exclusive remedies and rights for personal injury "arising out of and in the course of employment ...." 19 Del. C. Ann. § 2304 (1997).[4]

Although defendant relies on *Correa v. Pennsylvania Manufacturers Association Insurance Company*, 618 F.Supp. 915 (D.Del.1985), to argue that these provisions of the law bar plaintiff's suit, the holding to which defendant refers is inapposite to plaintiff's complaint. *Correa* held that the plaintiffs could not sue the defendant carrier over compensation for treatment of work related injuries prior to seeking a hearing before the Board. *Correa*, 618 F.Supp. at 921–922. The *Correa* court also held, however, that a claim for breach of the duty of good faith and fair dealing is not precluded by a failure to seek Board review if "the injuries for which recovery is sought are not components of the physical injuries which originally gave rise to plaintiff['s] worker's compensation claims" but rather arise out of a delay of or out of a refusal to pay medical benefits. *Id.* 618 F.Supp. at 923.

Since *Correa*, the Supreme Court of Delaware has determined that this duty of good faith sounds in contract rather than in tort, *see Pierce*, 671 A.2d at 1366–1367, thereby rejecting the federal court's holding to the contrary. *See Correa*, 618 F.Supp. at 923. Nevertheless, the *Pierce* court held that when the "injury alleged by the employee arose after the work-related accident, [the exclusivity provision is] inapplicable" even when the action sounds in contract. 671 A.2d at 1364–1365, 1367 (permitting contract-based bad faith claim based on delayed compensation). As is evident from the record, plaintiff is pursuing a claim for injuries stemming from Liberty's alleged mishandling of

---

**2.** Industrial Accident Board Rule 4, pertaining to "Notice of Denial of Liability," states:

(A) An insurance carrier or self-insurer shall within 15 days after receipt of knowledge of a work-related injury advise the Board and the claimant in writing of the following:

(1) The date the notice of claimant's alleged industrial accident was received by the insurance carrier or self-insured employer; plus,

(2) If the claim is accepted by the insurance carrier or self-insured employer; or

(3) If the claim is denied by the insurance carrier or self-insured employer giving the reasons for the denial; or

(4) State that the insurance carrier or self-insured employer presently cannot accept or deny the claim, give the reasons therefore; and stating approximately when the determination will be made.

(B) All medical expenses shall be paid by the carrier within 30 days after bills for said expenses are sent to the carrier for payment, unless the carrier notifies the claimant or his attorney in writing that said expenses are contested or that further verification is required.

(C) Should claimant allege to the Board that the insurance carrier or self-insured has failed in their responsibilities under Sections(A) &

(B) the Board will schedule a hearing. The claimant and the insurance carrier or self-insured employer will present their respective positions. After the hearing, if warranted the Board will assess a fine of not less than $100 nor more than $1,000.

**3.** Section 2346 states in pertinent part:

If any person charged with the payment of medical and other services and the provider to whom said payment is due fail to reach an agreement in regard to such charges, any interested party may notify the Department of the facts. * * *The Board shall hear and determine the matter.

19 Del. C. Ann. § 2346 (1997).

**4.** Section 2304 provides:

Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

19 Del. C. Ann. § 2304 (1997)

her case, not for injuries resulting from the fall. Therefore, plaintiff's claim does not run afoul of *Correa* or *Pierce* by virtue of plaintiff's failure to obtain a Board hearing.

### B. Delayed and denied compensation

The duty of good faith and fair dealing arises at two major stages in the processing of a claim. The first stage involves the "initial determination of coverage" and the second stage involves the "determination of the amount of compensation and the payment [of the compensation]" after the insurer has acknowledged liability. *Id.* 671 A.2d at 1364. Plaintiff asserts defendant breached its duty during both of these stages.

■ Mere delay or lack of payment is not bad faith if a reasonable justification exists for the inaction. *See Tackett v. State Farm Fire and Casualty Ins. Co.*, 653 A.2d 254, 266 (Del.1995); *see also Pierce*, 671 A.2d at 1366 (same); *Hostetter v. Hartford Insurance Co.*, 1992 WL 179423 at *8–9 (Del.Super.). However, delays caused by a " 'get tough' policy, i.e., a general business practice of claims denial without a reasonable basis, may subject the insurer to a bad faith claim." *Tackett*, 653 A.2d at 266.

■ Contrary to defendant's assertions, there is evidence of delayed payments, *see, e.g.,* D.I. 38 at 1–27, 31–33, 36, 65–66, and refusals to pay, *see, e.g., id.* at 1–27, 51–64, 105–106, some of which occurred prior to the filing of the lawsuit. *See, e.g.,* D.I. 38 at 22–23, 31–33, 36, 106.[5] Further, although there is evidence that at least some of the refusals were based on a belief that certain injuries were not work related or that certain treatments were unnecessary, *see e.g.,* D.I. 38 at 55–64, 105, plaintiff has raised a genuine dispute as to the reasonableness of the delays and denials of payment. *See, e.g., id.* at 83, 101–107; D.I. 36 at 20.[6] Moreover, plaintiff has raised a genuine dispute as to the existence of a pattern or practice or such behavior. *See* D.I. 38 at Exh. 12.

### C. Interference with the doctor/patient relationship

■ Assuming without deciding the alleged interference of the relationship between Dr. Townsend and plaintiff by defendant's employee both occurred and caused harm, the Court is still faced with an issue of first impression with regard to whether such interference constitutes a basis for a breach of a good faith and fair dealing claim under a workers' compensation contract. The parties

5. Defendant points to plaintiff's first two examples of late payments in the record and explains that, given the dates of submission and payment, neither bill was paid late. Although the Court does not rely on these bills to determine the outcome of this motion, defendant's assertion that the bills were received on particular dates and paid within thirty days of those dates is meaningless. The bills contain date stamps which oddly indicate three different dates of receipt for each bill, *see* D.I. 38 at 28–29 (unnumbered back sides), the last date for each being the one relied upon by the defendant. Although the delay in payment is determined based on the date that the bills were received, the Court is unable to determine which receipt date is accurate for these bills and defendant was unable to resolve this problem with any certainty at oral argument.

6. The Court agrees with defendant that a claim for breach of the duty of good faith should not permit a jury to subvert the role of the Board and determine the compensability of certain treatments. However, permitting plaintiff to pursue such a claim based on denied bills that are disputed and have not been deemed compensable by the Board does not shift the Board's responsibility to the jury. Plaintiff's claim does not ask the jury to decide if plaintiff's depression was related to her injuries or whether the RSD in her legs was related to that in her arms. Rather, the claim asks the jury to assess the reasonableness for the denial. For example, the jury may determine that, if one of the insurance adjusters refused treatment for the RSD in plaintiff's legs based solely on his own uninformed determination that it was not related, *see* D.I. 38 at 104–105, despite the belief of her doctor that it was related and a desire of her doctor to test for such a relationship, *see id.* at 103, a jury may conclude that the summary denial of bills related to RSD in her legs was unreasonable. This determination would legitimately respond to the breach of the duty of good faith claim without regard for whether further testing would have revealed such a connection or whether the Board would have deemed the RSD treatment for plaintiff's legs compensable. In other words, a denial could be rendered in bad faith, *e.g.* based on a predetermined course of action or without regard for uncontradicted evidence of compensability, *see, e.g., Liberty Mutual Fire Insurance Co.*, 898 S.W.2d 944 (Tex.App.1995); *cf. Tackett*, 653 A.2d 254, regardless of the actual compensability of the claim.

have been unable to point to any law addressing this specific question and the Court is unaware of any. For guidance in making this determination, the Court relies primarily on *Pierce,* in which the contract-based good faith and fair dealing cause of action within a workers' compensation framework was outlined. The *Pierce* court explained, as discussed previously, that the duty of good faith arises at two stages in the processing of a claim: the determination of coverage and the determination and payment of the amount of compensation. *See* 671 A.2d at 1364. On their face, these components of the duty of good faith and fair dealing do not include an attenuated protection from interference with the doctor-patient relationship.

Beyond these essential elements of the duty of good faith, the Court turns to the "reasonable expectations" of the parties to decide whether a certain right was protected by the carrier's inherent obligation of good faith under the contract. *See id.* at 1366. The phrase "reasonable expectations" is defined with reference to the purpose of the workers' compensation law and the expectations of the parties. *See id.* at 1366 n. 3. The purpose of the workers' compensation law is to ensure the timely compensation of injured employees, which is not undermined by defendant's alleged interference, however troublesome. *See* 671 A.2d at 1364. With regard to the expectations of the parties, although one could certainly argue that no patient expects an employee of the insurance company to falsely inform a treating doctor that the patient is going to sue for malpractice, it does not follow that such was an expectation of the parties during the formation of the contract. On the contrary, the record supports the conclusion that both the objective and subjective expectations which underpinned the contract at the time of formation related to the paying of benefits or the processing of the claims. Holding otherwise would distort the contract based duty of good faith and fair dealing into a cause of action sounding in tort, which was rejected by the Supreme Court of Delaware, *see Pierce,* 671 A.2d at 1366-1367. Such an interpretation would also expand the duty of good faith to

encompass any unjustifiable act perpetrated by the carrier, regardless of how attenuated its relationship to the explicit obligations of a workers' compensation contract.

Therefore, however inexcusable it was for an employee of the insurance company to mislead plaintiff's treating doctor into anticipating an impending lawsuit by plaintiff, the event does not form the basis for a breach of the contractual duty of good faith and fair dealing that arises under a workers' compensation statute. Whether this reprehensible conduct is admissible at trial must necessarily be determined at a later date.

## II. Compensatory Damages

Damages for breach of contract have "traditionally excluded recovery for emotional distress ... which was unaccompanied by physical injury." *Pierce,* 671 A.2d at 1367; *see also Tackett,* 653 A.2d at 265 (stating same). However, plaintiff seeks recovery not only for "severe emotional distress" but also for "clinical depression, vomiting, gastric distress, sleeplessness, and recurrent anxiety." D.I. 1 at 2. Delaware law makes clear that such ailments satisfy the physical injury requirement. *See, e.g., Lupo v. The Medical Center of Delaware,* 1996 WL 111132, *2–4, 1996 Del.Super. LEXIS 46, *6–11 (1996) (holding that plaintiff's sleeplessness, headaches, crying spells, rage, nervousness, guilty, eating disorders and depression, which were neither "transient nor non-recurring," met the physical injury standard); *Drainer v. O'Donnell,* 1995 WL 338700, *3 (Del.Super.1995) (holding allegations of sleeplessness and nausea satisfy the physical injury requirement). Moreover, the record raises a genuine dispute as to the existence of these injuries, *see, e.g.,* D.I. 38 at 98–100, 101–102, 130–132; D.I. 36 at 31, 49, 44, and as to plaintiff's claim that defendant's conduct contributed to them. *See, e.g.,* D.I. 36 at 48–49.

## III. Punitive Damages [7]

Punitive damages may be available to a plaintiff in a breach of contract case

---

7. Defendant argues plaintiff may not assert a claim for punitive damages because she fails to

allege in the complaint that the defendant engaged in intentional or reckless conduct. The

if the delay in payment or the denial of coverage was wilful or malicious. *See Pierce,* 671 A.2d at 1367; *Tackett,* 653 A.2d at 266; *see also Reiver v. Murdoch & Walsh,* 625 F.Supp. 998, 1014 (D.Del.1985) (same). This standard requires a plaintiff to show the defendant exhibited "reckless indifference or malice towards the plight of the injured employee[.]" *Pierce,* 671 A.2d at 1367; *see also Tackett,* 653 A.2d at 265 (explaining standard requires evil motive or reckless indifference). *Cf. Jardel,* 523 A.2d at 529–530 (stating same standard in a tort context). Courts have emphasized the burden of this standard in the context of contract actions. *See Pierce,* 671 A.2d at 1367; *see also Reiver,* 625 F.Supp. at 1015 (stating that punitive damages require a showing the defendant acted "without probable cause, for the purpose of injuring [the other party] by depriving him of the benefits of the [contract]").

▮▮▮ Punitive damages will not be justified based solely on a showing that the defendant took a stance that was "unreasonable or unjustified," *Pierce,* 671 A.2d at 1367, or that the conduct was intentional, "unless the intentional breach is similar in character to an intentional tort." *Reiver,* 625 F.Supp. at 1015. Therefore, it is not surprising that in cases in which the breaching party believed there existed a meritorious defense to its actions, the plaintiff was not entitled to seek punitive damages as a matter of law. *See Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 369 (Del.Super.1982), *cited with approval in Pierce,* 671 A.2d at 1367; *see also Reiver,* 625 F.Supp. at 1015. Similarly, mere lack of judgment, incompetence or bureaucratic confusion will not support a claim of punitive damages. *See Pierce,* 671 A.2d at 1367 (citing *Jardel,* 523 A.2d at 529); *Tackett,* 653 A.2d at 266 (citing *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73, 80–81 (1986)).

▮▮ In light of the above and the Court's obligation to apply the substantive law of the state of Delaware, *see Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3d Cir.1990)

(citing *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)), plaintiff's claim for punitive damages must fail as a matter of law. Although the record may support a finding of reprehensible conduct grounded in unreasonableness or incompetence, the record does not support a finding of reckless indifference or malice towards the needs of the plaintiff and the recognized benefits under the contract. The record shows that the late payments, however unjustified they may have been, were generally not particularly egregious when compared with similar cases denying punitive damages. *See* D.I. 38 at Exhs. 1–2; *Tackett,* 653 A.2d at 266. Moreover, the refusals to pay were based on a belief, however erroneous, that the charges were not compensable. *See, e.g.,* D.I. 38 at 105, 129–137.

The Court agrees with plaintiff that, if defendant refused to compensate plaintiff for the RSD treatment to her legs based only on its uninformed determination that the injury was unrelated to the original work injury, such conduct was unacceptable. Nevertheless, the Supreme Court of Delaware has held that similar conduct does not meet the onerous burden of proof required to recover punitive damages in a contract claim. *See Tackett,* 653 A.2d at 266 (holding that although seven months delay in paying the policy limits "in the face of full documentation and recommendations of the claim agent and outside counsel may well constitute bad faith," it did not demonstrate the plaintiff was "singled out for malicious treatment" and could not support a claim of punitive damages); *see also Liberty Mutual Fire Insurance Co. v. Crane,* 898 S.W.2d 944, 950–952 (Tex.App.1995) (holding that the insurance carrier's continuous pursuit of a medical opinion that rejected the report both of plaintiff's doctors and of the carrier's own expert in order to achieve the predetermined goal of denying plaintiff's claim could support a bad faith claim but not punitive damages).

The Court is not unsympathetic to the difficulties, frustration and anger reflected in

---

time for filing a Fed R.Civ P. 12(b)(6) motion for failure to state a claim has passed. The claim for punitive damages will be evaluated based on the standard for a Fed.R.Civ.P. 56 summary judg-

ment motion, which requires the Court to consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed. R. Civ. P. 56(c).

the record and allegedly generated by the defendant's conduct in the instant case. However, with necessary deference to the standard established by the Delaware courts, the Court must hold that the allegedly bad faith behavior giving rise to these unfortunate experiences does not present a case for punitive damages.[8]

### Conclusion

Defendant's motion for summary judgment on plaintiff's claim that defendant breached its duty of good faith and fair dealing will be granted insofar as it relates to the alleged interference between plaintiff and her doctor and will be denied insofar as it pertains to defendant's delays or denials of compensation. Defendant's motion for summary judgment on plaintiff's claim for compensatory damages will be denied but defendant's motion for summary judgment on plaintiff's claim for punitive damages will be granted.

---

8. The Court must follow the State of Delaware courts when interpreting state law. The Court notes, however, that plaintiff's case for punitive damages would remain under *Correa,* a federal district court case which interpreted Delaware law as it existed prior to the Delaware court decisions discussed in this Opinion. 618 F.Supp. at 929. Nevertheless, *Correa* held the bad faith claim sounded in tort, *see* 618 F.Supp. at 922–923, while the Supreme Court of Delaware subsequently determined the action sounds in contract. *See Pierce,* 671 A.2d at 1366–1367. This distinction affects the strictness with which the standard for punitive damages is applied. *See Pierce,* 671 A.2d at 1367; *Reiver,* 625 F.Supp. at 1015.