NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PENNSYLVANIA, Defendant Below, Appellant,

v.

William S. McDOUGALL, Plaintiff Below, Appellee.

No. 212, 2000.

Supreme Court of Delaware.

Submitted: Feb. 13, 2001.

Decided: March 28, 2001.

Reargument/Rehearing En Banc Denied June 29, 2001.

Christopher J. Sipe, of Bailey & Wetzel, P.A., Wilmington, for Appellant.

Scott R. Mondell (argued), and H. Garrett Baker, of Elzufon & Austin, Wilmington, for Amicus Curiae Air Products and Chemical Company.

William D. Fletcher, Jr. (argued), Craig T. Eliassen, and Donna L. Harris, of Schmittinger & Rodriguez, Dover, for Appellee.

1. 19 *Del. C.* ch. 23.

2. 19 *Del. C.* ch. 11.

Before VEASEY, C.J., BERGER and STEELE, JJ.

PER CURIAM:

This case involves the question whether an employer (or its insurance carrier) can be held liable under the provisions of the Workers' Compensation Act[1] and the Wage Payment and Collection Act[2] for failure to pay an award made by the Industrial Accident Board, notwithstanding a finding that the failure to pay does not amount to a breach of the implied contractual obligation of good faith and fair dealing. Because we hold that an employer can be held liable under the Acts in question even when nonpayment of an award was not in bad faith, we affirm the ruling of the Superior Court.

### Contentions of the Parties

National Union Fire Ins. Co. of Pittsburgh, Pennsylvania ("National Union"), has appealed from the Superior Court's grant of summary judgment in favor of William S. McDougall on Count IV of McDougall's Amended Complaint seeking statutory damages and attorney's fees arising from nonpayment of an award of medical expenses made by the Industrial Accident Board (the "Board"). McDougall cross-appeals from the grant of summary judgment in favor of National Union on Counts I–III. These counts allege National Union's bad faith in the handling and nonpayment of benefits owed to McDougall.[3] After hearing argument by the parties, the Superior Court entered an order awarding McDougall damages under Count IV of his complaint and dismissing Counts I–III. National Union's primary contention on appeal is that it was legal error for the

3. Counts I and II of McDougall's complaint are not relevant to our resolution of the issues presented in National Union's appeal.

Superior Court to find liability on Count IV in light of its resolution of the good faith claim in Count III in its favor.

Count IV of McDougall's complaint sought damages under the provisions of the Workers' Compensation Act[4] and the Wage Payment and Collection Act.[5] In *Huffman v. Oliphant*[6] this Court explained how these provisions confer jurisdiction on the Superior Court to award damages against employers for wrongful suspension or nonpayment of benefits.

Title 19, section 2357 of the Delaware Code provides: "If default is made by the employer for 30 days after demand in the payment of any amount due under this chapter, the amount may be recovered in the same manner as claims for wages are collectible." Claims for wages are made under 19 *Del. C.* § 1113(a), which provides: "A civil action to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction."[7]

Thus, in cases of wrongful nonpayment of an amount due under the Workers' Compensation Act, the Superior Court has jurisdiction to order the relief set forth in 11 *Del. C.* § 1103(b), which provides that "if the employer, without any reasonable grounds for dispute," fails to pay amounts due, "the employer shall ... be liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller...." As noted above, the Superior Court found National Union liable for failing to pay an award made by the Board where that award has become final under these provisions.

Count III of McDougall's complaint concerns nonpayment of the same award of medical expenses that is the subject of Count IV. Specifically, Count III alleges that this nonpayment was in bad faith. As explained more fully below, the Superior Court found that National Union did not act in bad faith. National Union argues that summary judgment should not have been granted in favor of McDougall on Count IV of his complaint because, for the purposes of Count III, the Superior Court found that National Union acted in good faith when it failed to pay the award. National Union argues that this finding of good faith cannot be reconciled with the finding of liability on the *Huffman* claim in Count IV, and that in light of the dismissal of the bad faith claim, the Superior Court committed legal error in resolving Count IV against National Union.

In effect, National Union argues that good faith is a defense to liability on Count IV. We disagree. Because we affirm the judgment against National Union on Count IV, we do not reach McDougall's cross-appeal from the grant of summary judgment for National Union on Counts I–III.[8]

---

4. 19 *Del. C.* ch. 23.

5. 19 *Del. C.* ch. 11.

6. Del.Supr., 432 A.2d 1207, 1210–11 (1981); see also *Holden v. Gaico*, Del.Supr., 736 A.2d 202, 203 (1999).

7. "This Court has held that to give effect to provisions in Section 2357, the reference to 'wages' in Section 1113(a) 'must be construed to included claims based on unpaid work-men's compensation benefits....'" *Holden*, 736 A.2d at 203 (citing *Huffman*, 432 A.2d at 1210). Accordingly the provisions of section 1113(c) permit recovery of "any amount due under the Workers' Compensation statute." *Holden* at 203.

8. McDougall represents in his brief that he is cross-appealing the Superior Court's judgments on Counts I–III only in the event that this Court reverses the judgment in his favor on Count IV.

## Facts and Proceedings Below

We begin with a summary of the basic facts necessary to an understanding of the disputed issues. McDougall was injured in a work-related accident on July 18, 1990, while employed by Air Products & Chemicals, Inc. ("Air Products"). National Union, Air Products' insurer, began paying temporary total disability benefits, and payment of total disability benefits later continued under an agreement concluded between McDougall and National Union and approved by the Board.[9] In April 1991, McDougall suffered a severe stroke. Following this stroke, McDougall sued his doctors in Florida, apparently for failing to diagnose the condition that led to the stroke. The suit was settled for over $1 million, resulting in a net recovery by McDougall of $580,166.78. As explained more fully below, National Union offers this settlement as an explanation for failing to compensate McDougall for his medical expenses on the basis that this third-party recovery should offset the amounts owed McDougall.

In December 1992, National Union, on behalf of Air Products, filed a petition to terminate disability benefits on the basis that McDougall's stroke-related disability was not related to the work accident. In an order dated August 17, 1993, the Board dismissed the petition because National Union had not met its burden of showing that McDougall's disability was not related to the industrial accident. In November 1993, National Union filed a second petition to terminate benefits, again on the ground that McDougall's stroke was not a work-related injury. McDougall also petitioned the Board for payment of additional benefits, primarily medical expenses associated with the stroke, on the ground that the condition causing the stroke occurred at the time of the work accident.

The Board held hearings on the parties' petitions. At the hearings, the Board heard conflicting medical testimony concerning whether McDougall's stroke was related to the accident. In an Opinion and Order dated September 22, 1995 (the "1995 Order"), the Board found that McDougall's stroke had its origin in the industrial accident, and that consequently McDougall's medical expenses were compensable. Accordingly, National Union's petition was denied, and McDougall's petition was granted. McDougall was awarded $367,697.66 as reimbursement for past medical expenses. The Order makes no mention of a credit in connection with the Florida settlement.

Air Products filed a motion for reargument of the 1995 Order, which the Board dismissed as untimely by order dated March 21, 1996. Air Products did not appeal this dismissal to the Superior Court but instead made further filings with the Board requesting reconsideration of its timeliness ruling. Nearly two years later the Board issued an order dated June 19, 1998, indicating that it would hold an evidentiary hearing on the timeliness issue. McDougall filed a motion for reargument of this order, contending that the Board lacked jurisdiction to reconsider the finality of its timeliness decision of March 21, 1996, which National Union had not appealed. The Board granted McDougall's motion by order dated August 6, 1998. National Union appealed that order to the Superior Court. The Superior Court summarily dismissed this appeal. This Court affirmed, holding that Air Products' failure to appeal the March 21, 1996 denial of the motion for reargument meant that the Board's denial of the motion was "final,"

9. Air Products & Chemicals, Inc. was the named party in certain of the proceedings referred to below, and has filed an *amicus curiae* brief in National Union's appeal.

and that further actions by the Board were a "nullity" since it lacked jurisdiction.[10]

Before the 1995 Order, McDougall had filed a complaint in Superior Court alleging bad faith handling of his compensation claims. In September 1997, McDougall filed an amended complaint. A Count III was added, alleging bad faith non-payment of the award of medical expenses in the amount of $367,697.66 made by the Board in the 1995 Order. As described above, a Count IV was added seeking compensatory and statutory damages. The parties filed cross-motions for summary judgment. The Superior Court rejected the bad faith claim but granted McDougall summary judgment on his *Huffman* claim. Accordingly, the Superior Court ordered payment to McDougall of $924,529.02, an amount reflecting primarily the 1995 award and statutory damages. National Union appeals that order.

### *The Superior Court's Rejection of the Bad Faith Claim Does Not Preclude Statutory Liability for Nonpayment of the Award*

▆▆▆ As noted above, Count IV of McDougall's complaint sought damages under the provisions of the Workers' Compensation Act and the Wage Payment and Collection Act. In this case, the Superior Court properly found National Union liable for failing to pay to McDougall the

"amount due" under the 1995 Order. The Superior Court awarded appropriate damages under 19 *Del. C.* § 1103. At the same time, the court rejected McDougall's bad faith claim, because it found that there was a "bona fide dispute as to the applicability of a credit" that, if it existed, would reduce National Union's payments to McDougall. The dispute over a credit stems from National Union's view that under 19 *Del. C.* § 2363(e) [11] its payments to McDougall should be offset by the amount McDougall recovered in his settlement with his Florida doctors. Although the issue of a credit has never been presented to the Board, National Union argues that it "enjoys" a credit under section 2363(e) based on the settlement recovery. National Union also points to apparent concessions made by McDougall's counsel at a hearing indicating that a credit might exist. In light of these arguments, the Superior Court found that National Union's nonpayment of benefits was not in bad faith.[12] Accordingly, summary judgment was entered for National Union on Count III of the Amended Complaint.

National Union argues that this finding precludes liability for nonpayment of benefits under *Huffman*. National Union focuses on language in *Huffman* stating that liability is based on "*wrongful*" non-pay-

---

10. *Air Products & Chemicals, Inc. v. McDougall*, Del.Supr., No. 209, 1999, 1999 wl 734666, Berger, J. (August 25, 1999) (ORDER).

11. § 2363(e) provides in relevant part that a "recovery against [a] third party for damages ... shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Workers' Compensation Act to date of recovery, and the balance shall forthwith be paid to the employee...."

12. National Union owes a duty of good faith to McDougall. This duty arises out of Nation-

al Union's insurance contract with Air Products, of which McDougall is the third-party beneficiary. *See Pierce v. International Ins. Co. of Ill.*, Del.Supr., 671 A.2d 1361, 1366 (1996). An insurer violates this duty when "it delays or terminates payment of a claim in bad faith." *Id.* (citation omitted). To show breach of the obligation of good faith, the plaintiff must show that the insurer acted without "reasonable justification in delaying or refusing payment." *Tackett v. State Farm Fire & Cas. Co.*, Del.Supr., 653 A.2d 254, 264 (1995).

ment,[13] and also on the provisions of section 1103(b), which predicates liability on non-payment "without any reasonable grounds for dispute." National Union argues that if the Superior Court found a "bona fide" dispute concerning the amounts due, then nonpayment cannot have been wrongful or unreasonable for the purposes of Count IV.

■ This argument fails because, as this Court stated in *Huffman*, "the alleged 'good faith' belief of an employer or insurer that the employee is no longer entitled to compensation is irrelevant under this statute."[14] National Union's obligation to pay attached when the Board's September 22, 1995 award became final.[15] Thus, the decision not to pay the award was "wrongful" because it contravened a final order of the Board, notwithstanding a bona fide dispute sufficient to defeat McDougall's claim that National Union was not acting in good faith.

Failure to pay an amount due can be "wrongful" in a sense that does not necessarily imply bad faith. In light of the unappealed 1995 Order, which does not establish a credit, there is no basis for National Union's refusal to pay the medical expenses that would preclude awarding statutory damages to McDougall. The award under the Board's 1995 Order is an "amount due"[16] under the Act regardless of National Union's good faith objections based on its view that a credit existed. National Union's attempt in this case to relitigate whether it truly owes a Board award that has become *final* is incompatible with the statutory remedy outlined in *Huffman.*

■ Similarly, we agree with the Superior Court's rejection of National Union's contention that McDougall is estopped from suing for statutory damages. This estoppel argument is based on several statements made by McDougall's counsel allegedly indicating that there would be a credit.[17] Based on our review of the record we find support for the Superior Court's rejection of the estoppel argument. The 1995 Order and related hearings concerned two petitions, one by National Union to terminate payments and one by McDougall to collect additional payments. National Union did not petition for a credit, and it was not an issue at the hearings. The 1995 Order makes no mention of a credit, and no credit is reflected in the award. National Union did not appeal the resulting award. Based on the record before us, we agree with the decision of the Superior Court that McDougall is not estopped from suing for damages.

■ National Union also challenges whether a valid demand was made.[18] The Superior Court found that the complaint satisfies the demand requirement as a matter of law. The addition of Count IV was noticed to National Union in September 1997. Count IV cites *Huffman*, the relevant statutory bases for liability, and

---

13. 432 A.2d at 1210 (emphasis added).

14. *Huffman,* 432 A.2d at 1209.

15. *See Holden v. Gaico,* Del.Supr., 736 A.2d 202, 204 (1999); *Keeler v. Metal Masters Food Service Equip. Co.,* Del.Super., 768 A.2d 979, Ridgely, P.J., (1999), *aff'd.* Del.Supr., 755 A.2d 389 (2000) (holding that unappealed Board awards become final and establish liability under *Huffman*).

16. 19 *Del. C.* § 2357.

17. The parties dispute the context and meaning of the alleged stipulations.

18. *See Huffman,* 432 A.2d at 1210 (stating than an employee may pursue statutory remedies "after proper demand has been made").

the 1995 Order. We agree with the Superior Court that this is a "proper demand."

### *Conclusion*

The Superior Court's rejection of the claim of bad faith made against National Union in Count III of McDougall's complaint does not preclude liability for statutory damages under Count IV. The Superior Court properly found National Union liable for statutory damages for failure to pay a final award of the Board. Accordingly, we affirm the judgment of the Superior Court.