Satoshi IKEDA, M.D. and Satoshi
Ikeda, M.D., P.A., Defendants
Below, Appellants,

v.

Guizelous O. MOLOCK and
Inez Molock, Plaintiffs
Below, Appellees.

Supreme Court of Delaware.

Submitted: Dec. 12, 1991.
Decided: Dec. 27, 1991.
Rehearing Denied Jan. 15, 1992.

John A. Elzufon and Lawrence S. Drexler (argued), of Elzufon, Austin & Drexler, Wilmington, for appellants.

Kester I.H. Crosse of Potter, Crosse & Leonard, P.A., Wilmington, and Barry L. Steelman (argued), of Barry L. Steelman, P.A., Baltimore, Md., of counsel, for appellees.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court *en banc*).

MOORE, Justice.

The appellants, Satoshi Ikeda, M.D., and Satoshi Ikeda, M.D., P.A., ("Dr. Ikeda") appeal from a jury verdict awarding damages to the appellees, Guizelous O. Molock and Inez Molock, ("Molock") for personal injuries suffered by Mr. Molock and for loss of consortium suffered by Mrs. Molock. Prior to trial, Dr. Ikeda moved to file cross-claims against two parties who had settled plaintiffs' claims against them. The Superior Court denied Dr. Ikeda's motion. In addition, because Dr. Ikeda had not filed cross-claims against the settling parties, the trial court denied his request that a joint tort-feasor instruction be given to the jury. Clearly, the filing of a cross-claim is a prerequisite to the apportionment of liability based on the relative degrees of fault between joint tort-feasors. However, it was an abuse of discretion to deny Dr.

Ikeda's motion to file the cross-claims. Accordingly, the judgment of the Superior Court is reversed and the case is remanded for a new trial.

I.

The following facts are not disputed by the parties. On July 10, 1984, while traveling in Virginia, Mr. Molock became ill. He was admitted to Chippenham Hospital in Virginia and released four days later. Although the exact nature of Molock's illness was not determined, the discharge summary noted a "coin lesion" on his left lung.

After returning to Delaware, Molock was examined by Dr. Salameda, his family physician. Under the orders of Dr. Salameda, Molock was admitted to St. Francis Hospital ("St. Francis"). Dr. Salameda referred several thoracic surgeons to Molock. He chose Dr. Ikeda. Dr. Ikeda ran a battery of tests focusing on the lesion on Molock's lung. After reviewing the test results, Dr. Ikeda decided to perform a thoracotomy in order to remove the lesion and have it evaluated.

On July 27, 1984, Dr. Ikeda performed the thoracotomy. During the procedure, a frozen section of the tissue was sent to the pathologist, Dr. Naik. Dr. Naik reported that a malignancy was found. Relying on Dr. Naik's findings, Dr. Ikeda performed a partial lobectomy on Molock's left lung. A few days after the surgery, Dr. Naik reexamined the tissue material and determined that the cell tissue was not malignant. Following additional tests, the lesion on Molock's lung was found to be a pulmonary infarct.

On July 16, 1986, Mr. and Mrs. Molock sued Dr. Ikeda, Dr. Naik and St. Francis in the Superior Court, alleging medical malpractice. Several days prior to trial, Dr. Naik and St. Francis settled with the Molocks. Because Dr. Ikeda had not filed cross-claims against St. Francis or Dr. Naik, he and his professional corporation were the sole remaining defendants at trial.[1] On the morning of trial, February 12,

---

1. Although the settlement had been reached and neither of the settling defendants appeared at trial, no dismissal in fact had yet been entered as to St. Francis and Dr. Naik.

1990, Dr. Ikeda moved to amend the pleadings to assert cross-claims against St. Francis and Dr. Naik, who technically remained as defendants in the action.[2] The trial court denied Dr. Ikeda's motion. In addition, the trial court held that because no cross-claims had been filed, the jury would not be instructed to prorate damages based upon the fault attributable to St. Francis and Dr. Naik.[3]

On February 16, 1990, the jury returned a verdict against Dr. Ikeda, awarding Mr. Molock $850,000 and Mrs. Molock $250,000. Dr. Ikeda then filed a motion for a new trial and in the alternative for a remittitur. The motion for a new trial was denied, however, the trial court granted a remittitur as to the verdict for Mrs. Molock, reducing the award to $75,000. *Molock v. Ikeda*, Del.Super., C.A. No. 86C–JL–98, Bifferato, J. (April 19, 1990).

## II.

Dr. Ikeda first contends that the Superior Court erred by refusing to give a joint tort-feasor instruction to the jury. Underlying this argument are two separate issues: (1) whether a joint tort-feasor instruction may be given in the absence of a cross-claim; and (2) whether the Superior Court's denial of Dr. Ikeda's motion to file the cross-claims was an abuse of discretion. Thus, Dr. Ikeda's argument presents questions of statutory construction and the ap-

plication of law to the facts. Accordingly, this Court will exercise plenary review. *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, Del.Supr., 498 A.2d 1108, 1113 (1985).

## A.

The question whether a jury may determine relative degrees of fault among joint tort-feasors in the absence of a cross-claim has never been specifically addressed by this Court. Dr. Ikeda contends that 10 *Del.C.* Ch. 63 requires a jury to apportion liability between joint tort-feasors even in the absence of a cross-claim. However, the language of 10 *Del.C.* Ch. 63 does not support that proposition.

Although 10 *Del.C.* § 6302(d) [4] allows the apportioning of liability among joint tort-feasors based upon relative degrees of fault, 10 *Del.C.* § 6306(b) [5] provides that such apportionment is available only if certain procedural criteria are satisfied. Section 6306(b) provides two methods for obtaining contribution from a joint tort-feasor: (1) a cross-claim against a coparty; or (2) a motion for contribution against any other *joint judgment debtor*. The second method is limited by 10 *Del.C.* § 6306(d), which provides that even if a judgment has been entered against joint tort-feasors in a single action, the relative degrees of fault shall not be considered in determining their

---

**2.** There was some dispute as to whether Dr. Ikeda requested leave to file the cross-claims. The record leaves much to be desired. The application was made at a conference in chambers, and there is no transcript. We again emphasize the importance of such proceedings being transcribed. However, because the Superior Court stated that it "denied Ikeda's motion to cross-claim against the absent defendant[s]," we assume that the motion was presented to the trial court and opposed by plaintiffs. *Molock v. Ikeda*, Del.Super., C.A. No. 86C–JL–98, Bifferato, J. (April 19, 1990).

**3.** Such proration would not have altered the exposure of the settling defendants since that was limited by their settlement with plaintiffs. It would, however, have had the potential effect of reducing Dr. Ikeda's share of any judgment rendered in plaintiffs' favor.

**4.** 10 *Del.C.* § 6302(d) provides:
When there is such a disproportion of fault among joint tort-feasors as to render ineq-

uitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares.

**5.** 10 *Del.C.* § 6306(b) provides:
A pleader may either (1) state as a cross-claim against a coparty any claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant; or (2) move for judgment for contribution against any other joint judgment debtor, where in a single action a judgment has been entered against joint tort-feasors one of whom has discharged the judgment by payment or has paid more than his pro rata share thereof. If relief can be obtained as provided in this subsection no independent action shall be maintained to enforce the claim for contribution.

pro rata liability unless "the issue of proportionate fault [was] litigated between them by *cross-complaint* in that action" (emphasis added).[6] Thus, 10 *Del.C.* § 6306(d) requires the filing of a cross-claim between parties to the litigation before a jury may prorate liability based upon proportionate fault.

The conclusion that 10 *Del.C.* Ch. 63 requires a cross-claim to be filed before a jury may determine relative degrees of fault is further supported by the proposition that juries should not determine matters which are not litigated before them. A jury may not properly fulfill its role as trier of fact unless the questions to be decided by the jury are litigated at trial. Accordingly, the filing of a cross-claim is a prerequisite to the apportionment of liability between joint tort-feasors based upon relative degrees of fault.

### B.

Thus, we turn to the question whether the denial of Dr. Ikeda's motion to file the cross-claims was an abuse of discretion. In determining whether to allow amendments to pleadings, the Superior Court is guided by Rule 15(a) which provides that after a responsive pleading has been filed, a "party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Del.Super.Ct.Civ.R. 15(a). In general, this turns on questions of prejudice to the various parties.

In our view the record does not support a claim of prejudice by any party if the cross-claims were allowed. The appellees settled with St. Francis and Dr. Naik just prior to trial. Under the circumstances, it appears that the appellees were prepared for trial against all parties. The settlement agreement with St. Francis and Dr. Naik re-

quired the appellees to execute a joint tort-feasor release (the "Release").[7] The Release provided that damages recovered by the appellees against any other tort-feasor shall be reduced to the extent of the pro rata share of fault attributable to St. Francis and Dr. Naik. Allowing Dr. Ikeda to file the cross-claims would have been totally consistent with the provisions of the Release executed by the plaintiffs.

The Superior Court's decision denying Dr. Ikeda the right to file the cross claims caused him significant prejudice. A judgment of $925,000 was rendered against him, whereas, St. Francis and Dr. Naik settled for a much smaller sum. Moreover, Dr. Ikeda was unable to reduce the judgment by the potential damages which the jury could attribute to the negligence of St. Francis and Dr. Naik. The effect is that Dr. Ikeda's monetary responsibility here might be disproportionate to the injuries caused by his negligence.

The provisions of 10 *Del.C.* § 6304(b) were explicitly designed to avoid the inequitable result produced here. A joint tort-feasor release which conforms to the provisions of 10 *Del.C.* § 6304(b) relieves the released party of liability to any other joint tort-feasor, as long as the release "provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors." By executing the Release prepared in conformity with 10 *Del.C.* 6304(b), the appellees agreed to a reduction, to the extent of St. Francis' and Dr. Naik's pro rata share of liability, in the judgment rendered against Dr. Ikeda.

Certainly the cross-claims would not have prejudiced St. Francis or Dr. Naik. Their liability to the plaintiffs was fixed by the settlement agreement, and they were

---

6. 10 *Del.C.* § 6306(d) provides:

As among joint tort-feasors against whom a judgment has been entered in a single action, subsection (d) of § 6302 of this title applies only if the issue of proportionate fault is litigated between them by cross-complaint in that action.

7. The Release provides, in pertinent part, that:

This release is given before the right of any other alleged tortfeasor to secure a money judgment for contribution has accrued and is intended to provide for a reduction, to the extent of the pro rata share of fault or liability of the releasee, of the releasor's damages recoverable against any other tortfeasor, all pursuant to the terms of 10 *Del.C.* § 6304(b).

relieved of any liability to Dr. Ikeda by virtue of the Release.

Thus, under all the circumstances, we conclude that Dr. Ikeda was entitled to amend the pleadings to assert cross-claims against Dr. Naik and St. Francis.

### III.

Dr. Ikeda also argues that the Superior Court erred in permitting testimony regarding the cost differential between a thoracotomy and a needle biopsy. The Superior Court ruled that the disputed testimony was relevant to the issue of informed consent. We agree. There was no error in the admission of this testimony.

However, we note that the use of this evidence by appellees' counsel in his closing argument was inappropriate. In his summation, appellees' counsel multiplied the cost differential of the two procedures by the number of operations performed by Dr. Ikeda each year. The obvious purpose was to demonstrate how much money Dr. Ikeda made as a result of performing the more expensive thoracotomies. Counsel's statements were not related to the issue of informed consent, rather, they suggested that Dr. Ikeda acted out of greed. Upon retrial counsel should not be permitted such free rein in his closing arguments.

For the foregoing reasons, the judgment of the Superior Court is REVERSED. The matter is REMANDED for a new trial on all issues.