## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        C. A. No. N17C-09-001 DCS
                                  )
GOLD FEVER, LLC, GOLD             )
FEVER FINANCE, LLC SHAUN S.       )
REILLY, KISHA A. REILLY, and      )
DENISE TOY                        )
                                  )
                Defendants.       )

### REPORT AND RECOMMENDATION THAT SHAUN S. REILLY'S MOTION TO DISMISS SHOULD BE DENIED AND ORDER THAT THE STATE OF DELAWARE'S MOTION TO AMEND COMPLAINT IS DENIED[1]

Through this civil action, the State of Delaware seeks forfeiture of assets, and civil penalties, arising from an alleged criminal enterprise operated by Gold Fever, LLC, Gold Fever Finance, LLC, Shaun S. Reilly ("Reilly"), Kisha A. Reilly,[2] and Denise C. Toy ("Toy") (collectively the "Defendants") in violation of the Delaware Organized Crime and Racketeering Act, Chapter 15 of Title 11 of the Delaware Code

---

[1]  A Report and Recommendation is issued for the Motion to Dismiss pursuant to Super. Ct. Civ. R. 132(a)(4) and an Order is entered on the Motion to Amend pursuant to Super. Ct. Civ. R. 132 (a)(3).

[2]  The Court was notified that Ms. Reilly passed away on August 3, 2016. An order was then issued staying this matter until the end of September.

(the "RICO Statute").  Presently before the Court is Reilly's Motion to Dismiss ("MTD") and the State's Motion to Amend the Complaint ("MTA").  A hearing was held on July 20, 2018,[3] and this is my Report and Recommendation and Order after considering the arguments presented by the parties.

## BACKGROUND

The relevant timeline of events is as follows:

- August 2, 2016 – Delaware State Police ("DSP") execute a search and seizure of Defendants' business and personal properties.  Defendants were each arrested and charged with various criminal offenses.

- March 3, 2017 - the State filed a Notice of Racketeering Lien (the "First Lien") including reference to (a) 970 Cox Neck Road (the "Real Property"); (b) the Gold Fever entities; (c) three Trumark financial accounts; (d) a TD Bank account; (e) three Wells Fargo accounts; (f) an Amazon customer ID; (g) a 2008 Hyundai Elantra; (h) a 2012 Chevy Travese; (i) a 2015 HMST Utility Trailer; and (j) an All-Terrain Vehicle.

- April 10, 2017 – Reilly pleads guilty to Criminal Racketeering, Conspiracy to Commit Racketeering and Possession of a Firearm during the Commission of a Felony in violation of Delaware's RICO Act.  Neither the Plea Agreement, nor the Truth-in-Sentencing Form reference any agreement for forfeiture of property or return of property.

- April 10, 2017 – The Court conducts a plea colloquy with Reilly and the issue of forfeiture is discussed.  Defense counsel states "[t]here's been other items, $60,000 in cash, bank accounts and cars.  He's not contesting any of that property, simply the home so his children have someplace to live."[4] The State's counsel responds that "there has been a civil racketeering lien filed

---

[3]  Ms. Toy appeared at the hearing with counsel but notified the Court that she took no position on the motions and was present to observe and demand a jury trial in the event the MTA was granted.

[4]  Plea Trans. at p. 15.

2

for all the property, which includes the house, cash, motor vehicles, other property seized."[5] The sentencing order reflected Defendant's position that he would contest forfeiture of the family home.[6]

- September 1, 2017 – Civil Complaint filed pursuant to 11 Del. C. §§1501 et. seq. (the "Civil Action"). In paragraphs 54-60, the State describes the funds of the criminal enterprise as including (a) funds deposited into certain bank accounts and a trust account; (b) auto loan payments for personal vehicles, a storage trailer and firearms; (c) funds used to purchase registered pit-bull puppies and for an addition/home remodel; (d) payments for Gold Fever expenses; (e) payments applied to personal taxes; (f) payments for credit card bills, personal cell phones, oil and utility payments, auto insurance premiums, little league memberships, medical insurance, rent, concert and event tickets, airfare, a cruise vacation and home renovations.

- December 19, 2017 – Reilly files a Motion for Return of Property (the "MRP") arguing an agreement was made for the return of the seized items listed on Exhibit A to the MRP. Reilly argues the State did not timely pursue a Motion for Forfeiture as required under Superior Court Criminal Rule 40 and that neither the First Lien, nor any negotiations between the parties or the Civil Complaint, put Defendant on notice that the State was seeking forfeiture of the items in his MRP. In response to the MRP, the State did not then seek to amend the Complaint, nor did it mention jewelry and coins that had been seized.

- April 4, 2018 – The State files a Notice of State of Delaware Racketeering Lien (the "Second Lien")[7] providing notice of the State's intent to seek forfeiture of no less than 149 seized items.

- May 2, 2018 - The Court issues a Trial Scheduling Order for the Civil Action.

---

[5] Plea Trans. at pp. 15-16.

[6] Plea Trans. at p. 18.

[7] During the hearing on Reilly's MRP, State's counsel provided the case number for the Civil Action. After the hearing concluded, I reviewed the docket in the Civil Action and learned of the filing of the Second Lien.

3

- May 22, 2018 – An Order is issued on the MRP staying any decision pending the outcome of the Civil Action.

- June 4, 2018 – The State files the MTA and in support suggests that "the Court prefers the asset forfeiture matter to proceed through a formally amended complaint rather than by a separate motion."

- June 8, 2018 - Reilly files the MTD for failure to state a claim and asserts the State has "unclean hands" because certain personal property has gone "missing" or disappeared.

- July 18, 2018 – The State files a Notice of State of Delaware Racketeering Lien (the "Third Lien") identifying the Real Property and property listed on an Appendix "A". The Third Lien included an "Amended Racketeering Lien" as an attachment with 149 numerical paragraphs of property, "Amended items" of an additional 20 numerical paragraphs, and an "Appendix A" of approximately 181 groupings of property including coins, cash, jewelry, stones and other valuables.

The State notified the Court by way of a July 18, 2018 cover letter, that the Third Lien was filed to assure the Court that the "missing property" was in the custody of DSP but had been inadvertently excluded from the inventory list provided to the State to prepare the lien for the Civil Action. After receiving Reilly's MTD the State contacted DSP who performed a supplemental inventory and prepared a report dated June 25, 2018 identifying the missing property.

The supplemental report includes an Investigative Narrative explaining that on June 21, 2018, the DSP conferred with the State in response to Reilly's MTD. According to the report, DSP reviewed the photos from the seizure and identified two black zipper bank bags and a purse style bag that were never accounted for in

4

the inventory. DSP then reviewed all evidence collected, and in particular the evidence seized from "Room 11" and eventually located the items contained now in evidence box labeled II-1. The list included approximately 18 items plus cash and jewelry. Evidence box II-8 was also found to include some jewelry and a large quantity of coins. In addition to the large quantity of coins, they located $9,434 in cash that was referenced in Reilly's MTD, as well as $1,886. The report states "[i]n considering how this evidence was overlooked in the completion of the itemized inventory, writer noted the sheer volume of evidence collected in this case and the number of investigators used to collect the evidence." The State remarked at the hearing that it may seek further amendments, or file an updated lien, and that a full itemization of all property seized is not yet available.

## MOTION TO DISMISS

The State first asserts that the MTD was filed out of time (247 days from service of the Complaint).[8] The State argues Reilly has not demonstrated excusable neglect because Reilly "had access to the available information throughout this litigation and neglected to avail himself of a timely opportunity to file a Motion to Dismiss." Reilly explained that he has never received the discovery from the criminal trial and has needed time to identify what property was seized and may be unaccounted for. Reilly is incarcerated and acting *pro se*. I find that Reilly acted

---

[8] Ironically, the State's MTA was filed 276 days after the Complaint was filed.

5

within a reasonable timeframe considering the unique obstacles involved in this case, and therefore Reilly has demonstrated excusable neglect. In light of the moving target set by the State with the filing of three liens over time as well as the fact that a complete list of the seized property is not yet available, I find that Reilly has not had "access to the available information" nor could he have reasonably acted sooner. The late filing is justified under the circumstances presented.

Turning to the merits of the MTD, I find the arguments do not warrant dismissal of the Complaint. Reilly first argues that the State of Delaware does not have standing to pursue the claims. However, the State clearly has standing pursuant to 11 Del. C. §§1505(b) and 1506(a) which provide the Attorney General with authority to institute proceedings under the RICO Statute and to seek forfeiture of real and personal property to the State.

Next, Reilly argues that the Complaint is not well pled because evidence has been overlooked, mistakes have been made, and the State has unclean hands because it knowingly withheld evidence stored in an unprotected location for approximately two years. If true, these accusations are disturbing, but even granting Mr. Reilly some leeway due to his *pro se* status, do not rise to the level necessary to justify dismissal.

A motion to dismiss will be denied if a party can recover under any reasonably conceivable set of circumstances.[9] The facts alleged in the complaint will be taken as true and interpreted in a light most favorable to the non-moving party.[10]

The Complaint outlines the relationship between the Defendants and how they allegedly used the corporate entities to engage in a criminal enterprise (*See* Paragraphs 16-26). The Complaint also sets forth claims of possession of firearms by persons prohibited, tax evasion, wire fraud, and mail fraud. The Complaint further states that the Defendants used the funds obtained from the criminal enterprise to make certain investments and to pay for personal expenses. The Complaint includes ten counts and 151 paragraphs in support. Accepting the facts as alleged as true, and interpreting the claims in a light most favorable to the State, I find that the Complaint sufficiently sets forth facts in support of a claim that Reilly engaged in a pattern of racketeering activity under the RICO Statute.

Finally, Reilly argues that the State has unclean hands because neither the First Lien nor the Second Lien disclosed the actual and true scope of items seized. By way of example, Reilly points the Court to the August 16, 2016 Supplemental

---

[9] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978), citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952).

[10] *Mortgage Elec. Registration Sys., Inc. v. Haase and Flanagan*, 2006 WL 1454807, at *1 (Del. Super. 2006), citing *Vanderbilt Income & Growth Assoc., LLC v. Arvida/JMB Managers, Inc.* 691 A.2d 609, 612 (Del. 1996).

Report of DSP. Despite the fact that the report references $144.00 in cash and "several stacks of USC inside a brown Michael Khors bag," neither of these items were listed on the First Lien or Second Lien.

"The doctrine of unclean hands is a rule of public policy designed to "'protect the public and the Court against misuse by persons who, because of their conduct, have forfeited the right to have their claims considered.'"[11] I do not find that the State's conduct has so offended the integrity of the court that the claims should be denied, regardless of merit.[12] In this case, as the State's Complaint seeks only legal remedies and monetary damages, relief based on the equitable doctrine of unclean hands would not be appropriate.[13] As such, I decline to dismiss the Complaint on this basis.[14]

---

[11] *Mortgage Elec. Registration Sys., Inc.* at *1, quoting *Furnari v. Wallpang, Inc.,* 2014 WL 1678419, at *9 n.26 (Del. Super. Ct. Apr. 16, 2014) (quoting *Gallagher,* 1991 WL 158969, at *4), *aff'd sub nom. New Castle Ins., Ltd. v. Gallagher,* 692 A.2d 414 (Del. 1997)).

[12] *Korotki v. Hiller & Arban,* 2017 WL 2303522, at *11 (Del. Super. May 23, 2017), quoting *Gallagher v. Holcomb & Salter,* 1991 WL 158969, at *4 (Del. Ch. Aug. 16, 1991 (citing *Skoglund v. Ormand Indus., Inc.,* 372 A.2d 204, 213 (Del. Ch. 1976)). *See also Deutsche Bank National Trust Co. v. Hines,* 2016 WL 7437860, at *3 (Del. Ch. Dec. 21, 2016) (recognizing doctrine applies to litigant who engages in reprehensible conduct in the matter).

[13] *Id.* at *12.

[14] The doctrine of unclean hands is also a defense thought to be outside the scope of a motion to dismiss. *Deutsche Bank National Trust Co. v. Hines,* 2016 WL 7437860, at *3 (Del. Ch. Dec. 21, 2016).

## MOTION TO AMEND

The MTA seeks to add a new paragraph 66 to the Complaint which identifies an "Exhibit A" that would purportedly be the Third Lien (it was not attached to the MTA or proposed Amended Complaint). In addition, the amendment would now add Count 11 entitled "Asset Forfeiture" that would lead to forfeiture of the Real Property as well as all property of the Defendants. This count does not specifically reference Exhibit A, but rather, states "[t]he State seeks forfeiture of all property currently held in custody by law enforcement."

On August 2, 2016, the State of Delaware executed a search and seizure of the business location as well as Reilly's personal residence. Numerous items were seized. On June 25, 2018 – almost two years later – the State has submitted a supplement to the original police report identifying seized items that had previously been misplaced. The Second Lien does not include items that were in the original Police Report which means the State *was aware* that these items had been seized, but did not include them in the lien notice. According to counsel's representation at the hearing, each police investigator was assigned to a room for the search. They would collect, inventory and record any items relevant to the seizure parameters. The items not included in the First Lien (or Second Lien) came from one part of one room searched by a member of the DSP. To prepare the First Lien, the State's

9

counsel requested a consolidated list of what was being held and where. They later came to learn that there was a large tow behind that had UPS boxes commingled with boxes containing the "missing property."

The State argues its Second Lien encompassed all "personal property, business goods and chattels and/or assets of Gold Fever, LLC and Gold Fever Finance, LLC" and therefore it was not necessary to identify the missing property specifically in any filings. Reilly argues that he should not be deprived of his right to retain property without fair notice and a hearing. Reilly claims he timely filed the MRP and to the extent any items are missing from the lien notices, this should be deemed a waiver of the State's right to seek forfeiture and the MRP granted. He believes the State is using the amendment process to circumvent his rights. Reilly further argues that the State should not be permitted to amend the Complaint to allow the State to withhold property illegally, but rather as a tool to address any newly discovered evidence.

Superior Court Civil Procedure Rule 15 allows the liberal granting of amendments when justice so requires. However, "justice may not require that leave to amend be freely given if the party seeking to amend has been inexcusably careless, or if the amendment would unfairly prejudice an opposing party."[15] In the absence

---

[15] *Parker v. State*, 2003 WL 24011961, at *7 (Del. Super. Apr. 30, 2004), citing *Hess v. Carmine*, 396 A.2d 173, 176 (Del. Super. 1978).

of prejudice to the other party, trial courts typically exercise discretion in favor of granting leave to amend.[16] Although delay alone is an insufficient basis to deny relief, inexcusable delay and repeated attempts at amendment may justify denial.[17] Likewise, evidence of bad faith or dilatory motive, repeated failures to cure deficiencies, prejudice, futility or the like may be grounds to deny a request to amend.[18] Courts have looked at whether the facts and averments forming the basis of the claims were consistent throughout the litigation such that the defendant was on notice of the specific conduct for which they may be liable.[19] As a notice pleading jurisdiction, the complaint is only required to provide the defendant with notice of the nature of the claim asserted.[20]

I find that there has been prejudice to the Defendants because of the delays with recovery and confusion over forfeiture. Reilly argued in his MRP that the

---

[16] *Mullen v. Alarmguard of Delmarva Inc.*, 625 A.2d 258, 263 (Del. 1993), citing *Ikeda v. Molock*, 603 A.2d 785 (Del. 1991).

[17] *Id.* citing *Chrysler Corp. v. New Castle County*, 464 A.2d 75 (Del. Super. 1983), *Laird v. Buckley*, 539 A.2d 1076 (Del. 1988), *H&H Poultry Co., Inc. v. Whaley*, 408 A.2d 289 (Del. 1979).

[18] *Parker v. State*, 2003 WL 24011961, at *3 (Del. Super. Apr. 30, 2004), citing *Hess v. Carmine*, 396 A.2d 173, 177 (Del. Super. 1978), *Forman v. Davis*, 371 U.S. 178 (1962).

[19] *Parker v. State*, 2003 WL 24011961, at *6, citing *Hess v. Carmine,* 396 A.2d at 177.

[20] *Parker v. State,* at *9, (internal citations omitted).

11

Complaint and lien notices did not put him sufficiently on notice of what was to be forfeited. In a separate order, I stayed the outcome of the MRP pending resolution of this matter. However, more than two months passed before the State moved to amend the Complaint and filed a Third Lien adding an additional 20 numerical paragraphs of "Amended items" plus an "Appendix A" with approximately 181 groupings of valuables for forfeiture. There are questions about the safekeeping of the seized property and when asked at the hearing, the State responded that it did not know when, or if, the amendments will stop. In the meantime, Reilly has legitimately questioned where his property is and made attempts to recover property not included in the First Lien or Second Lien.

Of significance is that the State, through its agent – DSP – did know of the facts on which the proposed amendment is based, but omitted the necessary allegations from the original Complaint, First Lien, and Second Lien. In looking back to the time of the seizure, 1 year and 350 days have passed, and between the time of the filing of the First Lien and Third Lien, 1 year and 137 days have passed which is excessive, careless and inexcusable. The delay by the State in moving to amend was unnecessary. The seized items have been in the possession of the State since the inception of the criminal matter (and Civil Action) and were not newly discovered. The State knew of, or could have known, the facts on which the proposed amendment is based when the original Complaint was filed. Despite this,

the "missing items" were not included in the First Lien, Second Lien, Response to MRP, Complaint, or until the Third Lien was filed – almost two years after the property was seized. The State argued that Reilly lacked excusable neglect because he "had access to the available information throughout this litigation and neglected to avail himself of a timely opportunity." That reasoning is wholly applicable to the State's conduct. New factual obligations or claims, or additional theories of liability should not be introduced at this late date of the case.[21] In light of the above, the MTA is denied.

IT IS hereby recommended that the Motion to Dismiss be DENIED and IT IS HEREBY ORDERED that the Motion to Amend is DENIED.

IT IS SO ORDERED this 27th day of September, 2018.

The Honorable Katharine L. Mayer

cc:    Prothonotary
       Oliver J. Cleary, Deputy Attorney General
       Angeline M. Kogut, Deputy Attorney General
       Jonathan Layton, Esquire
       Mr. Shaun S. Reilly (SBI# 00386187)
       Ms. Kisha A. Reilly[22]

---

[21] *See Wilson v. Consumers Life Ins. Co.*, 2000 WL 1211169, at *3 (Del. Super., Aug. 1, 2000).

[22] Service should be made to Ms. Reilly's representative.