# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW M. FERRARI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N17C-04-270 MMJ |
| HELMSMAN MANAGEMENT | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Submitted: June 1, 2020
Decided: June 23, 2020

Upon Defendant's Motion for Summary Judgment
**DENIED**
Plaintiff's Motion for Partial Summary Judgment on Bad-Faith Denial
**DENIED**
Plaintiff's Motion for Summary Judgment on Bad-Faith Delay
**DENIED**
Plaintiff's Motion for Leave to File an Amended Complaint
**DENIED**

## OPINION

John S. Spadaro, Esq., John Sheehan Spadaro, LLC, Smyrna, Delaware, *Attorneys for Plaintiff*

Timothy J. O'Driscoll, Esq., Frederick P. Marczyk, Esq., Faegre, Drinker, Biddle & Reathe, LLP, Philadelphia, Pennsylvania, Joseph C. Schoell, Esq., Faegre, Drinker, Biddle & Reathe, LLP, Wilmington, Delaware, *Attorneys for Defendant*

**JOHNSTON, J.**

1

## FACTUAL AND PROCEDURAL CONTEXT

SolarCity Corporation ("SolarCity"), a Delaware employer, is a company specializing in solar energy.[1] Defendant Helmsman Management Services, LLC ("Helmsman") is a Massachusetts corporation.[2] Helmsman contracted with SolarCity, and SolarCity's workers' compensation insurer (American Zurich Insurance Company) to act as a third party claims administrator ("TPA") for workers' compensation claims.[3]

In October 2016, Plaintiff Andrew M. Ferrari had been employed by SolarCity for about a year and a half.[4]

### 1. Plaintiff's Injury

Plaintiff's job at SolarCity required him to "fluff" roofing shingles. "Fluffing shingles is the process of using a prybar, 1 to 2.5 feet, to gently pry out shingles in order to remove the nails."[5] The work is "heavy-duty." "The materials and products weigh from 100-200 pounds. [Solar] [p]anels are about 44 pounds...."[6]

---

[1] Compl. ¶ 3.
[2] *Id.* ¶ 4.
[3] Defendant's Opening Br. ¶ 1, Exs. A, B, C (Workers' Compensation policy and contracts between Helmsman and Zurich and between Helmsman and SolarCity).
[4] *Id.* ¶ 2.
[5] Plaintiff's Op. Br. on Bad Faith Delay ¶ 6 & Ex. B. at 12, (IAB's *Decision on Petition to Determine Additional Compensation Due* (Feb. 15, 2018)).
[6] *Id.*

It is undisputed that fluffing shingles is the type of work that involves repetitive stress.[7] Plaintiff alleges that the repeated stress of fluffing shingles injured his cervical spine while working for SolarCity in 2016.

On October 5, 2016, Plaintiff was seen by Dr. Bradley Bley of Delaware Orthopaedic Specialists. Dr. Bley noted Plaintiff's injuries in the entry marked "Work Related Medical Diagnosis."[8] Dr. Bley's report indicates that Plaintiff's pain began months earlier, and that it was likely caused by a cervical disc herniation.[9] The report did not indicate that Plaintiff underwent any further diagnostic testing at that time.[10] Dr. Bley diagnosed Plaintiff as having "[c]ervical disc disorder with radiculopathy"[11] and instructed Plaintiff to take time off from work.[12]

### 2. Plaintiff's Workers' Compensation Claim

On October 6, 2016, SolarCity informed Helmsman that Plaintiff filed a workers' compensation claim on Monday October 3.[13] Plaintiff alleged that he was injured by the repetitive trauma caused by installing solar panels.[14] Plaintiff

---

[7] *Id.*, Ex. C, (Deposition of J. Frantz), at 109-10.
[8] *Id.*, Ex. E, (Physician's Report of Workers' Compensation Injury).
[9] *Id.*
[10] *Id.*
[11] Pl.'s Op. Br. on Bad Faith Delay ¶ 8, Ex. D at 3.
[12] *Id.*, Ex. E.
[13] Def.'s Op. Br., Ex. D.
[14] Pl.'s Op. Br. on Bad Faith Delay, Ex. E.

3

reported that he experienced minimal pain on September 30, but worked a full day that day and the following day, Saturday October 1.[15] Plaintiff reported that he had awoken on Sunday October 2 with severe pain in his shoulder, which still hurt.[16]

On October 12, Helmsman recorded an interview with Plaintiff. During the interview, Plaintiff confirmed what SolarCity told Helmsman. Plaintiff further explained that his injury was not caused by a "one time incident," but rather "repetitive trauma."[17]

### 3. Helmsman's Claim Handling

On October 18, Helmsman sent written notice to Plaintiff that his claim was denied. Helmsman claims to have called Plaintiff. Helmsman states that during this phone call, it explained to Plaintiff that causation and the mechanism of injury were questionable. Helmsman informed Plaintiff that he would be receiving a letter notifying him that Helmsman was denying the claim as not work-related at that time.[18] Helmsman states that it explained to Plaintiff that the denial was "not full/final yet," because Helmsman was still investigating and needed to obtain more information, including, among other things, medical records.[19]

---

[15] Def.'s Op. Br., Ex. E.
[16] *Id.*
[17] *Id.*, Ex. F at 3, (Interview of Plaintiff).
[18] *Id.*, Ex. L, (Call Record).
[19] *Id.*

4

Plaintiff again saw Dr. Bley on November 2, 2016. At that time, Dr. Bley ordered an MRI.[20]

Helmsman arranged for Plaintiff to be examined by Dr. Wayne Kerness, M.D., on November 8.[21]

On November 15, Plaintiff saw Dr. Mark Eskander, M.D., who recommended surgery.[22] On November 16, Helmsman received a note from Dr. Kerness' office on indicating Plaintiff could work light duty.[23] On November 17, Helmsman followed up with Dr. Kerness' office regarding Plaintiff's visit, but his office did not provide a full report at that time.[24]

Also on November 17, Helmsman was informed Plaintiff was scheduled for surgery on January 4, 2017.[25] Plaintiff's health insurer, which was paying for Plaintiff's medical treatment at the time, agreed to pay for the surgery.[26] Because Plaintiff's health insurer was paying for his medical treatment, rather than Zurich, Helmsman was not receiving all of Plaintiff's bills and medical records.[27]

---

[20] *Id.*, Ex. N, (Dr. Bley's November 2, 2016 Report).
[21] *Id.*, Ex. O.
[22] *Id.*, Ex. T.
[23] *Id.*, Ex. S.
[24] *Id.*, Ex. Q.
[25] *Id.*, Ex. U.
[26] *Id.*, Ex. V; Ex. K at 218:20-219:7, (Testimony of Rule 30(b) Witness, Julie Frantz).
[27] *Id.*, at 218:20-219:7, 181:24-182:10.

5

Plaintiff's workers' compensation attorney, Heather Long, contacted Helmsman on November 30.[28] On December 9, Plaintiff filed with the Industrial Accident Board ("IAB") a Petition To Determine Compensation Due (the "Petition").[29] The Petition identifies Dr. Eskander and Dr. Bley as Plaintiff's treating physicians.[30]

On December 2, Helmsman contacted Dr. Kerness' office again seeking his full report.[31] Helmsman finally received Dr. Kerness' report on December 9.[32] The report indicated that Plaintiff's injury was work-related, but that he could work light duty.[33] Thus, on December 12, SolarCity asked Plaintiff to return to work light duty.[34] Plaintiff refused.

On December 14, the IAB issued a Notice of Pretrial to Plaintiff's workers' compensation attorney and Zurich.[35] A hearing was scheduled with the IAB for April 2017.[36] Plaintiff had additional appointments with Dr. Eskander on December 20 and December 22.[37]

---

[28] *Id.*, Ex. W.
[29] *Id.*, Ex. X.
[30] *Id.*
[31] *Id.*, Ex. Q.
[32] *Id.*, Ex. P.
[33] *Id.*, Ex. Y.
[34] *Id.*, Ex. HH.
[35] *Id.*, Ex. Z.
[36] Pl.'s Op. Br. on Bad Faith Delay, Ex. J.
[37] Def.'s Op. Br., Ex. AA.

6

On January 4, 2017, Plaintiff's treating surgeon, Mark Eskander, M.D., performed an interior cervical discectomy and fusion at the C6-7 level. Helmsman agrees that this surgery allowed Dr. Eskander to actually see, and visually confirm, the herniated disc.[38]

On January 5, 2017, Helmsman's workers' compensation attorney, Geoffrey Lockyer, requested that Plaintiff produce all medical records. On January 9, Long sent Lockyer a letter requesting a Compensation Agreement given that Plaintiff had at that point been without income since early October.

On January 11, Lockyer subpoenaed the records directly from the treatment providers identified in Plaintiff's Petition.[39] On January 17, Long sent Lockyer a letter enclosing Plaintiff's medical records.[40]

On January 31, nearly four months after Plaintiff filed his workers' compensation claim, Lockyer emailed Long stating: "We are going to pick this claim up."[41] On February 8, Plaintiff signed an Compensation Agreement that identified SolarCity as his employer and Zurich as the insurer.[42]

### 4. This Action

In April 2017, Plaintiff filed this lawsuit, against Helmsman, asserting

---

[38] Pl.'s Op. Br. on Bad Faith Delay ¶ 15.
[39] Def.'s Op. Br., Exs. BB, CC.
[40] Id., Ex. BB.
[41] Id., Ex. DD.
[42] Id., Ex. EE.

7

claims for bad faith delay and denial of timely payment of workers' compensation benefits, as well as Intentional Infliction of Emotional Distress ("IIED").

Plaintiff filed a Motion for Leave to File an Amended Complaint on January 31, 2020. Plaintiff also filed motions for partial summary judgment on its bad faith delay claim and a second motion for partial summary judgment on its bad faith denial claim on March 2, 2020. On the same day, Defendant filed a motion for summary judgment on all of Plaintiff's claims. The parties submitted answering briefs and replies.

## STANDARD OF REVIEW

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[43] All facts are viewed in a light most favorable to the non-moving party.[44] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[45] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[46] If the non-moving party bears the burden of proof at trial, yet "fails to make a

---

[43] Super. Ct. Civ. R. 56(c).
[44] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).
[45] Super. Ct. Civ. R. 56(c).
[46] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

8

showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[47]

## ANALYSIS

### 1. Bad Faith Claim Against Third-Party Claims Administrator

Helmsman argues that Plaintiff's claims fail as a matter of law because Helmsman was a Third-Party Administrator ("TPA"), and therefore not a party to the contract.

The Supreme Court of Delaware has held that bad faith is a contract-based claim arising from a breach of the duty of good faith and fair dealing,[48] and "[o]nly a party to a contract may be sued for breach."[49]

Delaware courts have allowed injured workers and claimants seeking PIP benefits to assert bad faith claims against *insurers* on the theory that they are intended third party beneficiaries under workers' compensation insurance policies and automobile insurance policies.[50] Thus, "[w]here an insurer fails to investigate or process a claim or delays payment in bad faith, it is in breach of the implied obligations of good faith and fair dealing underlying all contractual obligations."[51]

---

[47] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[48] *Pierce v. Int'l Ins. Co. of Illinois*, 671 A.2d 1361, 1367 (Del. 1996).
[49] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002)
[50] *Colbert v. Goodville Mut. Cas. Co.*, 2010 WL 2636860, at *3 (Del. Super.).
[51] *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 264 (Del. 1995).

9

In this case, Helmsman is not the insurer, but rather a TPA. Helmsman argues that Plaintiff cannot maintain bad faith claims against Helmsman because as the TPA, Helmsman is not a party to the insurance contract between Zurich and SolarCity. Helmsman contends that it has no contractual obligations from which the duty of good faith would arise.

Plaintiff argues that a TPA may be sued directly for its bad faith handling of a workers' compensation claim. Plaintiff relies on *Thomas v. Harford Mutual Insurance Company*.[52]

In *Thomas*, the insured under a workers' compensation policy sued the TPA for bad faith handling of his claim.[53] The insured alleged that the TPA's failure to pre-approve payment for an evaluation and treatment for Reflex Sympathetic Dystrophy resulted in the progression of his symptoms leading to severe disability.[54] The TPA filed a motion for summary judgment on several grounds, including that the plaintiff could not assert a bad faith breach of contract claim grounded in a worker's compensation action.[55]

The *Thomas* Court defined the relationship between an insurer and TPA as one between principal and agent. If a principal appoints an agent to perform a

---

[52] 2003 WL 220511, at *3 (Del. Super. Jan. 31), *vacated by* 2003 WL 21742143, at *1–2 (Del. Super. July 25) (vacating on the intentional infliction of emotional distress claim, but clarifying on the breach of contract claim arising from the duty of good faith).
[53] *Thomas*, 2003 WL 220511, at *1.
[54] *Id.* at *2.
[55] *Id.* at *3.

10

duty, "the duty of an agent acting under the contract is the same as the duty of the princip[al]"[56] The *Thomas* Court held that the TPA may be sued directly for its bad faith handling of a workers' compensation claim because the TPA's duty is coextensive with the insurer.[57]

Instead of *Thomas*, Helmsman argues that this Court should follow *Colbert v. Goodville Mutual Casualty Company*,[58] and *Lipchock v. New Castle County*.[59]

In *Colbert*, the plaintiff was struck by a car and made a claim for PIP benefits under the driver's automobile insurance policy.[60] After the plaintiff was informed she would not receive any further benefits, she brought bad faith claims against the insurer, the TPA, and the TPA's adjuster.[61] This Court dismissed the bad faith claims against the TPA and its adjuster, explaining that "no claim lies against the moving defendants under the insurance contract because the moving defendants are not parties to the contract."[62]

In *Lipchock*, this Court refused to dismiss a bad faith claim against a defendant-TPA, because the complaint alleged the defendant-TPA was an insurer,

---

[56] *Thomas*, 2003 WL 21742143, at *1 (citing Restatement (Second) of Agency, § 17, Comment a).
[57] *Id.* at *2.
[58] 2010 WL 2636860, at *1 (Del. Super. June 30).
[59] 2013 WL 4674855, at *2 (Del. Super. Jul. 12).
[60] *Colbert*, 2010 WL 2636860, at *1.
[61] *Id.*
[62] *Id.* at *3.

11

and not a TPA.[63] The Court nevertheless clarified that the plaintiff would be required to show that the defendant was an insurer.[64]

*Colbert* and *Lipchock* are distinguishable from the instant case. Both *Colbert* and *Lipchock* specifically addressed PIP benefits, not workers' compensation.[65] There are different public policy considerations for each of these types of cases. Plaintiff asserts that, "while an injured motorist may recover from the at-fault driver whatever she cannot recover through PIP, workers' compensation is an injured worker's sole remedy. It is thus crucial that the injured worker be able to hold to account any entity that voluntarily takes control of the worker's financial and medical fate…."[66]

The Court need not engage in further analysis on this issue. The Court finds that *Thomas* controls. On this narrow issue of whether a plaintiff may sue a TPA for breach of the duty of good faith and fair dealing arising from a workers' compensation contract, there is no contradictory Delaware authority. The cases Defendant relies upon are distinguishable. Plaintiff's bad faith claim against Helmsman does not fail as a matter of law on the basis that a TPA is not a party to

---

[63] *Lipchock*, 2013 WL 4674855, at *2.
[64] *Id.*
[65] *See Colbert*, 2010 WL 2636860, at *3, *and Lipchock*, 2013 WL 4674855, at *2.
[66] Plaintiff's Ans. Br. ¶ 2.

12

the insurance contract.  **THEREFORE,** Defendant's Motion for Summary Judgment is hereby **DENIED.**

### *2. Bad Faith Investigation and Initial Denial and Punitive Damages*

#### *A. Bad Faith*

An insurer is not liable for bad faith unless "the insurer refuses to honor its obligations under the policy and clearly lacks reasonable justification for doing so."[67] Helmsman argues Plaintiff's bad faith claims fail as a matter of law because Helmsman acted reasonably in investigating and ultimately accepting Plaintiff's claim.

Plaintiff alleges that Helmsman had no reason or justification for denying Plaintiff's claim.  Plaintiff argues that denial of his claim was wrongful.  At the time Helmsman sent Plaintiff a denial letter, the only evidence available to Helmsman supported compensability of Plaintiff's claim.

Plaintiff also alleges that Helmsman unreasonably and unjustifiably delayed acceptance of Plaintiff's claim.  Helmsman ultimately accepted Plaintiff's workers' compensation claim four months after Plaintiff lost income and began incurring medical costs.

---

[67] *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 511 (Del. 2016).

13

The Court finds that there are genuine issues of material fact regarding whether Helmsman acted reasonably as a TPA in investigating and initially denying Plaintiff's claim.

*B. Punitive Damages and IIED*

Plaintiff has requested punitive damages for both its breach claims and its IIED claim.

In the workers' compensation context, punitive damages are recoverable only if a plaintiff proves "the bad faith actions of an insurer are taken with a reckless indifference or malice toward the plight of the injured employee."[68] "Mere inadvertence, mistake or errors of judgment which constitute mere negligence will not suffice."[69]

Similarly, to prevail on an IIED claim, a plaintiff must prove the defendant's conduct was "extreme and outrageous" and that he suffered "severe emotional distress."[70] Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

[68] *Pierce*, 671 A.2d at 1367.
[69] *Tackett*, 653 A.2d at 265.
[70] *Spence v. Cherian*, 135 A.3d 1282, 1288-89 (Del. Super. 2016).

14

community."[71] The emotional distress must be "so severe that no reasonable man could be expected to endure it."[72]

Helmsman argues that there is no evidence that Helmsman: (1) acted with malice or reckless indifference so as to support punitive damages; and (2) engaged in any conduct that is so extreme and outrageous that it could support an IIED claim.

Plaintiff claims that Helmsman's actions were reckless because Helmsman knew Plaintiff's injury was compensable, but disregarded Plaintiff's health when it denied and delayed payment. Plaintiff alleges that this reckless disregard caused him severe emotional distress over his loss of income, rising medical costs, and prolonging of physical injuries that otherwise could have been promptly treated. Plaintiff supports its contentions with evidence showing that Helmsman possessed reports and medical records indicating that Plaintiff's injury was likely compensable and nevertheless denied his claim and delayed payment.

The Court finds that plaintiff has established a *prima facie* case sufficient to survive summary judgment. **THEREFORE**, Defendant's Motion for Summary Judgment is hereby **DENIED.**

---

[71] *Id.*
[72] *Mandelaka v. Boyd*, 1993 WL 258798, at *1 (Del. Super).

### 3. Bad Faith Delay

Plaintiff argues that Helmsman unjustifiably delayed compensating Plaintiff and that Helmsman never received evidence that Plaintiff's claim was not compensable. Helmsman contends that: (1) Helmsman's initial denial was reasonable; and (2) the events of the subsequent investigation led to reasonable delay in the process.

Under Section 2362(a) in Title 19 of the Delaware Code, an insurer must within 15 days of receiving notice of a claim, inform a claimant in writing "whether the claim is accepted or denied; if denied, the reason for the denial; or if it cannot accept or deny the claim, the reasons therefor and approximately when a determination will be made."[73] If the insurer accepts a claim, it cannot reverse its decision to deny coverage upon discovering new information.[74] If an insurer denies a claim to continue investigation, it can always accept later once the investigation is completed.[75]

Helmsman's Superior Court Rule 30(b)(6) witness[76] testified that confirming the causation of a repetitive stress injury is more difficult than confirming

---

[73] 19 *Del*. C. § 2362(a).
[74] Def.'s Op. Br., Ex. K 104:1-12.
[75] *Id.*
[76] Super. Ct. Civ. R. 30(b)(6):

> A party may in the party's notice name as the deponent a public or private corporation or a partnership or association or governmental agency and describe

16

causation for a one-time incident.[77] Helmsman asserts that given the nature of Plaintiff's injury, "causation and mechanism of injury [we]re questionable" and that "prior medical records and current diagnostics [were] needed to review for causal relationship."[78] In addition, Plaintiff's first medical report did not indicate any diagnostic testing to determine his injury.[79] Thus, Helmsman argues that its denial, which was neither full nor final,[80] allowed Helmsman to reasonably continue investigating compensability while remaining compliant with the 15-day deadline.

Dr. Bley first ordered an MRI on November 2—almost a month after Plaintiff filed his workers' compensation claim.[81] The DME with Dr. Kerness took place on November 8,[82] but Helmsman did not receive Dr. Kerness' formal report for more than a month[83] despite following up on numerous occasions.[84] Helmsman

---

with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The persons so designated shall testify as to matters known or reasonably available to the organization. *Id.*

[77] *Id.*, Ex. K 108:10-14 ("[W]ith an acute injury where there's a one-time incident, it's more clear. Repetitive injuries are a little more, you know, tricky to – to confirm causation.").
[78] Def.'s Op. Br., Exs. I, J.
[79] *Id.*, Ex. E
[80] *Id.*, Ex. L.
[81] Def.'s Reply Br., Ex. N.
[82] *Id.*, Ex. O.
[83] *Id.*, Ex. P
[84] *Id.*, Exs. Q, R.

only received a note from Dr. Kerness' office on November 16, which indicated that Plaintiff could work.[85] On November 17, while still waiting for Dr. Kerness' report, Helmsman was informed that Dr. Eskander scheduled surgery for Plainitff.[86] On December 9, Helmsman received Dr. Kerness' report, which indicated that Plaintiff's injury was work-related, but reiterated that Plaintiff could work.[87] Thus, Helmsman argues that compensation was justifiably delayed for the purpose of a full investigation.

The Court finds that genuine issues of material fact exist precluding a ruling of bad faith delay as a matter of law. **THEREFORE**, Plaintiff's Motion for Partial Summary Judgment on Bad-Faith Delay is hereby **DENIED.**

### 4. Plaintiff's Motion for Leave to File Amended Complaint

Plaintiff's Proposed Amendments to his Complaint include: (1) adding SolarCity and Zurich as Defendants to the Complaint; and (2) adding allegations relating to the second petition Plaintiff filed with the IAB after this lawsuit commenced.

Superior Court Civil Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The Court "freely allows

---

[85] *Id.*, Ex. S.
[86] *Id.*, Ex. U.
[87] *Id.*, Ex. Y.

18

amendment in all but the most limited circumstances."[88]  Thus, "[i]n the absence of prejudice to another party, the trial court is required to exercise its discretion in favor of granting leave to amend."[89]

Plaintiff argues that because Helmsman denies liability for bad faith claims on the grounds that it was a TPA, Plaintiff ought to be permitted to include additional parties who potentially could be held liable in the event Helmsman's argument prevails.

Denial of a motion for leave "is proper where there is undue delay, bad faith or dilatory motive on the part of the movant."[90]  A motion for leave "should be made as soon as the necessity for altering the pleading becomes apparent."[91]  Justice does not require leave "where the moving party has been inexcusably careless or where such motion is untimely,"[92] or "if the amendment would unfairly prejudice an opposing party."[93]

The deadline for a motion to amend was January 20, 2018, nearly two years prior to when Plaintiff filed its motion.  Plaintiff was aware of its proposed

---

[88] *Gotham Partners*, 714 A.2d at 103 (citations omitted).
[89] *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993) (citing *Ikeda v. Mollock*, 603 A.2d 785, 787-88 (Del. 1991)).
[90] *Marro v. Gomez*, 1996 WL 453311, at *5 (Del. Super.).
[91] *Hess v. Carmine*, 396 A.2d 173, 177 (Del. Super. 1978); *see also Martinez v. E.I. DuPont de Nemours & Co.*, 2012 WL 4479164, at *2 (Del. Super.).
[92] *Marro*, 1996 WL 453311, at *5 (citations omitted).
[93] *Hess*, 396 A.2d at 176; *see also H & H Poultry Co., Inc. v. Whaley*, 408 A.2d 289, 291 (Del. 1979) (affirming denial of motion to amend filed 3 years after suit was filed where movant knew of claim sought to be added long before filing the motion to amend).

additional parties well before the deadline expired because contracts involving the additional parties were produced in 2017. Defendant also asserts that additional discovery would be necessary. The February 3, 2020 discovery deadline has passed. The allegations relating to the second IAB petition occurred after this lawsuit was filed.[94] The IAB issued its decision on February 2, 2018, almost two years before the discovery deadline had passed, and shortly after the motion to amend deadline had passed, yet Plaintiff did not move to amend at that time.

The Court finds that Plaintiff unduly delayed its Motion for Leave to File an Amended Complaint. Plaintiff's motion for leave to amend was not timely made.[95] Allowing Plaintiff to further delay the case due to additional discovery would cause unfair prejudice to defendant.[96] Additionally, the Court has found that Plaintiff's bad faith claim against Helmsman does not fail as a matter of law. Thus, the alleged necessity of adding other parties is alleviated. **THEREFORE,** Plaintiff's Motion for Leave to File Amended Complaint is hereby **DENIED.**

### 5. *Bad Faith Denial*

For the same reasons relating to the bad faith delay claim, the Court declines to dismiss the bad faith denial claim as a matter of law.

---

[94] In June 2017, Plaintiff filed a second Petition with the IAB regarding "a second and separate body part: injury to his lumbar spine." Pl.'s Bad Faith Denial Op. Br. ¶ 2. Prior to Plaintiff's Motion for Partial Summary Judgment on Bad Faith Denial, Helmsman's handling of Plaintiff's second claim relating to the lumbar injury had never been at issue in this action.

[95] *See Marro*, 1996 WL 453311, at *5; *see also Hess*, 396 A.2d at 177.

[96] *See H & H Poultry Co., Inc.*, 408 A.2d at 291.

For the same reasons relating to the motion to amend, any events occurring after the Complaint in this action was filed, which have not been the subject of discovery prior to expiration of the discovery deadline—specifically including Helmsman's handling of the claim underlying the second IAB petition—will not be admissible as part of a bad faith denial claim. **THEREFORE**, Plaintiff's Motion for Partial Summary Judgment on Bad Faith Denial is hereby **DENIED.**

## CONCLUSION

The Court finds that *Thomas*[97] controls. On the narrow issue of whether a plaintiff may sue a TPA for breach of the duty of good faith and fair dealing arising from a workers' compensation contract, there is no contradictory Delaware authority. The cases Defendant relies upon are distinguishable. Plaintiff's bad faith claim against Helmsman does not fail as a matter of law on the basis that a TPA is not a party to the insurance contract.

The Court also finds that there are genuine issues of material fact regarding whether Helmsman acted reasonably as a TPA in investigating and initially denying Plaintiff's claim. The Court finds that plaintiff has established a *prima facie* case sufficient to survive summary judgment on the issues of bad faith and

---

[97] 2003 WL 220511 (Del. Super. Jan. 31), *vacated on other grounds by* 2003 WL 21742143, at *1–2 (Del. Super. July 25).

21

punitive damages. **THEREFORE**, Defendant's Motion for Summary Judgment is hereby **DENIED.**

The Court finds that genuine issues of material fact exist precluding a ruling of bad faith delay as a matter of law. **THEREFORE**, Plaintiff's Motion for Partial Summary Judgment on Bad-Faith Delay is hereby **DENIED.**

The Court finds that Plaintiff unduly delayed its Motion for Leave to File an Amended Complaint. Plaintiff's motion for leave to amend was not timely made.[98] Allowing Plaintiff to further delay the case due to additional discovery would cause unfair prejudice to defendant.[99] Additionally, the Court has found that Plaintiff's bad faith claim against Helmsman does not fail as a matter of law. Thus, the alleged necessity of adding other parties is alleviated. **THEREFORE**, Plaintiff's Motion for Leave to File Amended Complaint is hereby **DENIED.**

---

[98] *See Marro*, 1996 WL 453311, at *5; *see also Hess*, 396 A.2d at 177.
[99] *See H & H Poultry Co., Inc.*, 408 A.2d at 291.

For the same reasons relating to the motion to amend, any events occurring after the Complaint in this action was filed, which have not been the subject of discovery prior to expiration of the discovery deadline—specifically including Helmsman's handling of the claim underlying the second IAB petition—will not be admissible as part of a bad faith denial claim. **THEREFORE**, Plaintiff's Motion for Partial Summary Judgment on Bad Faith Denial is hereby **DENIED.**

**IT IS SO ORDERED.**

_____

The Hon. Mary M. Johnston

23