# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL MOYER, | : | |
| | : | |
| Plaintiff, | : | K19C-09-026 JJC |
| | : | |
| v. | : | |
| | : | |
| AMERICAN ZURICH INSURANCE | : | |
| COMPANY , | : | |
| | : | |
| Defendant. | : | |

Submitted: February 5, 2021
Decided: April 28,  2021

## MEMORANDUM OPINION AND ORDER

*Defendant's Motion for Partial Summary Judgment* – **DENIED**


Phillip T. Edwards, Esquire, Murphy & Landon, Wilmington, Delaware,  *Attorney for the Plaintiff.*

Bruce W. McCullough, Esquire, Bodell Bove, LLC, Wilmington, Delaware, *Attorney for the Defendant.*


**Clark, J.**

Plaintiff Michael Moyer ("Mr. Moyer") sues Defendant American Zurich Insurance Company ("AZIC") for alleged bad faith adjustment of his workers' compensation claim. For purposes of summary judgment, AZIC concedes that genuine issues of material fact exist regarding whether it delayed investigating and paying Mr. Moyer's claim in bad faith. That is, there will be a factual issue at trial regarding whether it delayed its investigation and payment without reasonable justification. AZIC contests, however, whether a factual issue exists regarding the potential for punitive damages.[1]

Here, the summary judgment record read in the light most favorable to Mr. Moyer will permit a reasonable jury to infer that AZIC recklessly disregarded Mr. Moyer's rights as an insured. As a result, AZIC's motion for partial summary judgment regarding the issue of punitive damages must be **DENIED**.

## I.     FACTS OF RECORD

The facts referenced herein are those of record viewed in the light most favorable to Mr. Moyer, as the non-movant. The claim results from a work injury he suffered on March 5, 2019. While troubleshooting a heat pump on a ladder, he received an electrical shock. As a result, he suffered a fractured scapula and other shoulder injuries. His employer, CBRE, submitted a claim to AZIC, its workers' compensation insurer, on the same day.[2] AZIC then sent a letter to Mr. Moyer the next day. It acknowledged Mr. Moyer's claim and assigned Monique Redman as his claims adjuster.[3]

---

[1] AZIC also initially sought partial summary judgment regarding the scope of potential compensatory damages. At oral argument, Mr. Moyer conceded that his compensatory damages will be capped at the interest payable as a result of AZIC's alleged three-month delay in paying him Temporary Total Disability ("TTD") benefits. As a result, AZIC withdrew that portion of its motion as moot.

[2] Pl's Opp. to Def's Motion for Part. Sum. J., Ex. C, AZIC 915-16.

[3] Def's Motion for Part. Sum. J., Ex. B, AZIC 903.

There were discrepancies in how Mr. Moyer described the events surrounding his injury. The initial claim stated that he had been electrocuted.[4] Subsequent reports indicated he may have suffered his injury from a fall caused by the electrocution.[5] Regardless, he sustained work injuries while in the course of his employment.[6]

On March 8, 2019, within three days of Mr. Moyer's accident, an AZIC employee acknowledged in writing that two women witnessed the incident.[7] Furthermore, on March 11, 2019, Ms. Redman created a file titled "Compensability" where she recorded the location and cause of Mr. Moyer's injury.[8] The file also noted a "Y" in the field that answered the question regarding whether the injury was compensable.[9] At a Rule 30(b)(6) deposition, AZIC's designee would not acknowledge that "Y" meant yes in this case.[10] The designee nevertheless acknowledged that "Y" typically stands for "yes."[11] Despite that entry, on March 27, 2019, Ms. Redman sent an email to CBRE's risk manager that recommended denying Mr. Moyer's claim.[12] The reasons she provided in the email were as follows: (1) Mr. Moyer described the mechanism of injury inconsistently; (2) Mr. Moyer retained a lawyer; and (3) Mr. Moyer was a a bodybuilder.[13]

At some point late in March, Mr. Moyer became inpatient regarding the lack of action taken on his claim. He left an unanswered message with Ms. Redman. When he did reach her, at the end of March, she told Mr. Moyer "I don't work on

---

[4] Pl's Opp. to Def's Motion for Part. Sum. J., Ex. C, AZIC 915-16.
[5] Def's Motion for Part. Sum. J., Ex. I, AZIC 585-87.
[6] Robles Dep. at 51-52; *see also* Pl's Opp. to Def's Motion for Part. Sum. J., Ex. C.
[7] Claim Notes, AZIC 531.
[8] *Id.* at AZIC 528.
[9] *Id.*
[10] Robles Dep. at 74-82.
[11] *Id.* at 76-79.
[12] Pl's Opp. To Def's Motion for Part. Sum. J., Ex. F., AZIC 717.
[13] *Id.*

your schedule" and "I don't check my voicemail."[14] Separately, she also allegedly engaged in a "screaming match" at one point with Mr. Moyer's doctor's office.[15] Following those exchanges, at CBRE's request, AZIC replaced Ms. Redman with Melissa Robles. Ms. Robles later served as the insurer's Rule 30(b)(6) designee in this litigation.[16]

On April 2, 2019, Mr. Moyer underwent surgery on his left shoulder to address a dislocated shoulder and fractured shoulder blade.[17] On the same day as the surgery, AZIC belatedly sent a statutorily required 19 *Del. C*. §2362(a) ("Section 2362(a)") letter to Mr. Moyer informing him that it could neither accept nor deny the claim for two reasons.[18] These new reasons differed from the three reasons Ms. Redman cited in her email to CBRE. Namely, AZIC informed Mr. Moyer that it could not accept the claim because it lacked medical documentation and because it needed to investigate the claim further.[19] Furthermore, AZIC sent the letter outside the statutorily required 15-day time frame for doing so, and also failed to provide an estimate of how long it would take to provide a final decision.[20] As to the later statutory deficiency, it merely informed Mr. Moyer that its "investigation [would be] completed as soon as possible."[21]

---

[14] Letter from J. Spadaro to the Court (Feb. 5, 2021), Ex. B (email from A. Boga, Sr. Risk Analyst, CBRE, discussing Mr. Moyer's concerns and requesting a new claims adjuster (Mar. 27, 2019)), AZIC 1940.

[15] Email from A. Boga, Senior Risk Analyst, CBRE, discussing Mr. Moyer's concerns and requesting a new claims adjuster (Mar. 27, 2019).

[16] Robles Dep. at 13:5-16.

[17] Pl's Opp. To Def's Motion for Part. Sum. J., Ex. B, AZIC 344-46.

[18] *Id.* at Ex. E, MM 58-59.

[19] *Id.*

[20] *Id.* at Ex. A, Robles Dep. at 218:7-20; *see also* 19 *Del. C.* §2362 (a) (providing that "[a]n employer or its insurance carrier *shall* within 15 days after receipt of knowledge of a work-related injury notify the Department and the claimant in writing of; . . . whether the claim is accepted or denied; if denied, the reason for the denial; or if it cannot accept or deny the claim, the reasons therefor and approximately when a determination will be made.") (emphasis added). There is no dispute that AZIC failed to comply with these requirements.

[21] *Id.* at Ex. E, MM 58-59.

On April 3, 2019, Mr. Moyer's attorney filed an IAB petition.[22]   Although AZIC had notice of at least two witnesses to the accident from the outset, Mr. Moyer's attorney followed-up by identifying three witnesses.  Despite that, AZIC still did not contact any witnesses to the accident until the middle of May.  At that point, AZIC acknowledged the claim to be compensable.[23]   That acknowledgment included AZIC's acceptance of Mr. Moyer's total disability from April 2, 2019 until he returned to work June 10, 2019.[24]   AZIC then issued two payments to Mr. Moyer, one for $7,136.50 on June 18, 2019 for total disability,[25] and one for $22,684.06 on July 14, 2020 for permanent partial disability. [26]

## II.    THE PARTIES' ARGUMENTS

AZIC argues that Mr. Moyer made inconsistent statements about the mechanism of his injury.  According to AZIC, those statements prompted it to investigate the claim further, which in turn contributed to its delay in paying his claim.  Furthermore, AZIC emphasizes that the claim was accepted as compensable approximately three months after the injury, which itself was not an unreasonable delay.  While AZIC acknowledges there will be a factual issue regarding whether the delay constituted bad faith, it contends that the evidence is insufficient to submit the issue of punitive damages to the jury.

Mr. Moyer counters by identifying facts he alleges are sufficient to support a reasonable jury's finding that AZIC acted with reckless indifference to Mr. Moyer's rights as an insured.  He alleges those facts support a finding that AZIC acted with

---

[22] Def's Motion for Sum. J., Ex. I, AZIC 585-87.

[23] Letter from B. McCullough to the Court (Feb. 5, 2021), Ex. A (email from AZIC counsel confirming conversation with M. Robles accepting Mr. Moyer's claim), AZIC 267-68.

[24] Pl's Opp. To Def's Motion for Part. Sum. J., Ex. P, (receipt for compensation paid, June 18, 2019), AZIC 192.

[25] *Id.*

[26] Def's Motion for Sum. J., Ex. P (receipt for compensation paid, July 14, 2020), AZIC 1621.

such disregard when it both investigated and delinquently paid his claim. Specifically, he cites evidence that AZIC withheld the true reason for its initial denial, including the three reasons provided by Ms. Redman in her email. Those reasons, he contends, included impermissible theories for denying the claim such as penalizing Mr. Moyer for hiring an attorney. Furthermore, he argues that despite AZIC's quick, written admission that the claim was compensable, it nevertheless withheld benefits, and then failed to comply with statutory notice requirements. Finally, he contends that the evidence supports that AZIC understood by March 2019 that it was harming Mr. Moyer, but, nevertheless, refused to accept his claim for two additional months.

## III.   PARTIAL SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.[27] This motion is one for partial summary judgment which is also available pursuant to Superior Court Civil Rule 56; that mechanism may address individual claims.[28] When considering a partial summary judgment motion, the Court must consider the evidence of record in the light most favorable to the non-moving party.[29] Furthermore, the moving party bears the initial burden of proof.[30] However, if the movant meets its initial burden regarding an issue, the burden then shifts to the non-moving party to demonstrate the existence of a material issue of fact regarding that issue.[31] At that point, the non-movant must demonstrate material facts in dispute that are sufficient to withstand a

---

[27] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[28] *See* Super. Ct. Civ. R. 56(a)-(b) (providing that either the claimant or defending party may move for summary judgment as to all of a case, or any part thereof).
[29] *Brozaka v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[30] Super. Ct. Civ. R. 56(e); *Moore*, 405 A.2d at 680 (Del. 1979).
[31] *Id.* at 681 (citing *Hurtt v. Goleburn,* A.2d 134 (Del. 1974)).

motion for a judgment as a matter of law and support the verdict of a reasonable jury.[32]

## IV.   ANALYSIS

The Court's analysis turns on the reasonable inferences that will be available regarding AZIC's state of mind.  To explain its decision, the Court first summarizes Delaware law regarding bad faith insurance litigation.  It then evaluates the evidence of record in light of that law.  Here, the facts and circumstances of this case, considered in the light most favorable to Mr. Moyer, permit an inference that AZIC recklessly disregarded the rights of its insured.

### A. Bad Faith Insurance Claims, Punitive Damages, and the Question of the Insurer's State of Mind

An insurance policy is a contract between an insurer and insured;  as a result, it includes an implied covenant of good faith and fair dealing.[33]  This duty of good faith extends to third-party beneficiaries of the insurance contract.  In the workers' compensation context, those beneficiaries include the policy holder's employees.[34]  When an insurer unjustifiably delays investigating, processing, or paying a claim, it breaches its implied contractual obligations.[35]  Nevertheless, a mere delay when investigating a claim or paying benefits does not alone amount to insurer bad faith so long as the insurer had a reasonable justification for the failure.[36]  On the other hand, an insured need not produce "smoking gun" evidence to survive summary

---

[32] *Lum v. Anderson*, 2004 WL 772074, at *2 (Del. Super. Mar. 10, 2004).

[33] *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1274-75 (Del. 2016).

[34] *Pierce v. International Ins. Co. of Ill.*, 671 A.2d 1361, 1366 (Del. 1996) (citing Restatement (Second) of Contracts § 304).

[35] *Tackett v. State Farm Fire & Casualty Ins., Co.*, 653 A.2d 254, 264 (Del. 1995) (citing *Merrill v. Crothall-American, Inc.*, 606 A.2d 96 (Del. 1992).

[36] *Id.* at 266.

judgment.[37]  Rather, "[i]n an appropriate case, inferences from facts can lead to a triable bad faith claim."[38]

Generally, in claims for breaches of good faith and fair dealing, compensatory damages are limited to those that are direct or consequential because such claims are contract actions.[39]  In addition, because of the special nature of insurance relationships, punitive damages may at times be available if a plaintiff can demonstrate that the insurer breached its obligations with malice or reckless indifference to the plight of its insured.[40]

In *Tackett v. State Farm*, the Delaware Supreme Court described the state of mind necessary to support a punitive damages claim against an insurer.  There, the Supreme Court observed that:

> [t]he penal aspect and public policy considerations that justify the imposition of punitive damages require that they be imposed only after a close examination of whether the defendant's conduct is "outrageous," because of "evil motive" or "reckless indifference to the rights of others." . . . Mere inadvertence, mistake or errors of judgment which constitute mere negligence will not suffice. It is not enough that a decision is wrong. It must result from a conscious indifference to the decision's foreseeable effect.[41]

Furthermore, punitive damages are appropriate only where the defendant showed a willful or wanton disregard of the plaintiff's rights.[42]  To prove a defendant's conduct to have been willful or wanton, the plaintiff must at a minimum produce evidence of the defendant's "conscious indifference" or "I don't care"

---

[37] *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 516 (2016).
[38] *Id.*
[39] *Id.* at 512.
[40] *Enrique*, 142 A.3d at 512; *Pierce*, 671 A.2d at 1367.
[41] *Tackett*, 653 A.2d at 265 (quoting *Jardel v. Huges*, 523 A.2d 518, 529 (Del. 1087) and Restatement (Second) of Torts § 908, cmt. B (1979) (citations omitted)).
[42] *Estate of Rae v. Murphy*, 956 A.2d 1266, 1270 (Del. 2008) (citing *Porter v. Turner*, 954 A.2d 308, 312 (Del. 2008) (quoting *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del. 1983)).

attitude.[43] Thus, the least level of culpability necessary to impose punitive damages against a bad faith insurer requires an elevated state of mind over the one necessary to demonstrate bad faith - that is, at a minimum, the bad faith insurer must have consciously disregarded the insured's rights with an "I don't care attitude."

Where a litigant's state of mind is an element of a claim, summary judgment is frequently inappropriate because of its fact-intensive nature.[44] Furthermore, when an artificial entity such as an insurance company is involved, the state of mind inquiry can be answered only by examining the state of mind of the company's employees.[45]

State of mind determinations often require a trier of fact to infer or decline to infer a subjective matter based upon objective facts. Superior Court Criminal Pattern Jury Instruction 2.5 provides the following helpful guidance:

> [i]t is of course difficult to know what is going on in another person's mind. Therefore, you are permitted to draw an inference, or in other words, reach a conclusion about a defendant's state of mind from the facts and circumstances. In reaching this conclusion, you may consider whether a reasonable person acting in the defendant's circumstances would have or would not have had the required state of mind.[46]

---

[43] *Id.*

[44] 10B Charles Alan Wright et al., *Federal Practice and Procedure* §2730 (4th ed. 2019); See *also Id.* § 2730.2 (citing decision from multiple jurisdictions denying summary judgment in the bad faith insurance context including instances involving claims for punitive damages); *see e.g.*, *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65 (5th Cir. 2014); *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931 (4th Cir. 1991) (reasoning "where states of mind are decisive as elements of a claim or defense, summary judgment ordinarily does not lie"); *O'Donnell v. Fin. Am. Life Ins. Co.*, 171 F. Supp. 3d 711 (S.D. Ohio 2016) (finding genuine issues of material fact existed regarding defendant's knowledge and motivations); *Atlas Carriers, Inc. v. Transp. Ins. Co.*, 584 F. Supp. 50 (E.D. Ark. 1983) (determining that "[a]t this stage, the Court cannot say that, given the factual background in this case, a jury could not infer bad faith from such conduct . . . at this point, the Court simply cannot say that the evidence and the reasonable inferences permitted will not present a jury issue under the applicable law").

[45] Wright et al., at § 2730 (quoting *Croley v. Matson Nav. Co.*, 434 F.2d 73, 77 (5th Cir. 1970)).

[46] Del. Super. Crim. P.J.I. 2.5 (2015).

While Mr. Moyer claims are civil and not criminal, the jury's role in determining a party's state of mind is the same for either. Because the Court's summary judgment decision must turn on the sufficiency of the evidence to justify submitting a state of mind question to the jury, the Court must evaluate the record evidence with these principles in mind.

## B. The evidence of record supports a reasonable inference that AZIC had a reckless state of mind.

For summary judgment purposes, AZIC concedes that the record supports a reasonable inference that it acted in bad faith. Regarding the separate issue of punitive damages, Mr. Moyer does not allege that AZIC acted with malice; rather, he alleges that AZIC acted with reckless indifference toward him. In this case, the two claims, for bad faith and for punitive damages, require the Court to examine the same interwoven evidence. Namely, the Court must consider the facts that are relevant to the issue of bad faith when it decides if those same facts rise to the higher level of culpability necessary to generate a factual issue as to punitive damages.

Here, AZIC satisfies its initial burden as movant. It emphasizes that it accepted Mr. Moyer's claim within three months of the accident and paid it shortly thereafter. It also identifies actions it took to investigate the claim - although those actions first occurred two and one-half months after the accident. Furthermore, AZIC correctly contends that mere mistakes or inadvertence to do not justify a finding of bad faith, or relevant to this partial summary judgment motion, the imposition of punitive damages.[47] In furtherance of its argument regarding mere neglect, it cites its internal correspondence in May, sent two months after the accident, where its employees were confused about the claim. On this record, a jury

---

[47] *Tackett*, 653 A.2d at 266.

may decline to find that AZIC acted in bad faith. If the jury finds no bad faith at the outset, it will not reach the issue of punitive damages.

In any event, because AZIC meets its initial burden on summary judgment, the burden shifts to Mr. Moyer to demonstrate a genuine issue of material fact regarding punitive damages. Here, Mr. Moyer demonstrates such a factual issue. Namely, when considered in their totality, the facts of record will permit a reasonable jury to find recklessness. These facts include that AZIC had notice of the claim almost immediately after Mr. Moyer's accident. Within three days of the accident, AZIC knew the identities of two disinterested witnesses but did not contact them for three months. Furthermore, within ten days of the injury, still in March 2019, AZIC's claims notes recorded "Compensable: Y." That evidence alone, could lead a reasonable jury to infer that AZIC knew it should pay the claim at that point, yet failed to further investigate it or pay it for another two months.

AZIC contends that Mr. Moyer's allegedly varied descriptions of the incident provided it a good faith basis to delay payment. A jury may find that to be the case. On the other hand, AZIC provided inconsistent reasons for its delay. When those reasons are examined in their totality, they support an inference of recklessness on AZIC's part. Namely, approximately two weeks after AZIC's adjuster typed in a "Y" regarding compensability in her claim notes, she emailed CBRE to recommend denial. She cited three reasons, but two of those three reasons were patently unsupportable on their face. Namely, she recommended denying the claim because Mr. Moyer exercised his right to hire an attorney to present his claim. She also recommended denying it because Mr. Moyer was a body builder, presumably because he could conceivably have injured himself lifting weights. While the third reason she provided was not as patently improper, the jury could infer an "I don't care" attitude from it as well. In her third reason, she cited Mr. Moyer's allegedly inconsistent accounts of whether the electrical shock itself, or his body's natural

11

reaction to the shock, caused his injuries. A reasonable jury could find AZIC's inquiry to be irrelevant since either would constitute a work injury.

There are further facts that cumulatively support an inference of AZIC's reckless conduct. For instance, approximately two weeks after Ms. Redman's email recommending denial, AZIC wrote to Mr. Moyer and told him differently. There, it gave him two reasons, not reasons to deny his claim, but rather reasons why it could not yet accept or deny it. AZIC had the statutory duty, pursuant Section 2362(a) to notify Mr. Moyer within fifteen days of notice of his claim if it could not yet accept it.[48] It did not send the letter until approximately thirty days after it learned of the accident. Furthermore, when it did, it did not give Mr. Moyer an estimate of the time needed to inform him of its decision. AZIC identifies no rationale for why it violated both of Section 2362(a)'s requirements. Notably, while Section 2362(a) provides no express penalty for an insurer's failure to comply with its mandates, at a minimum, AZIC's noncompliance with the statute's requirements may provide additional support for a jury's inference that AZIC did not care about Mr. Moyer's rights as an insured.

Finally, for AZIC to have held a reckless state of mind, it must have had awareness that its conduct created a substantial risk of harm to Mr. Moyer. Here, Mr. Moyer's contacts with AZIC in March 2019 demonstrate such awareness. For instance, the record includes March 26, 2019 emails between Mr. Moyer's employer and AZIC that demonstrate how frustrated Mr. Moyer was with AZIC's refusal to act. Moreover, CBRE notified AZIC the next day that Mr. Moyer was upset and anxious because Ms. Redman told him that she did not regularly check her voice mails, she did not work for him, and that she would handle his claim on her schedule. By the time of that exchange with Ms. Redman, the statutorily required fifteen-day

---

[48] 19 *Del. C*. § 2362(a). Failing to abide by this statutory provision requiring AZIC to provide a timely, full reason for the delay supports an inference of AZIC's "I don't care" attitude."

12

notice period had already expired. Furthermore, AZIC's claim records record an allegation that Ms. Redman had engaged in a shouting match with one of Mr. Moyer's medical providers. In response to Mr. Moyer's complaints regarding Ms. Redman's conduct, AZIC removed her from his case. AZIC's substitution of adjusters constitutes an admission by conduct that supports an inference that AZIC recognized the effect its delay had on Mr. Moyer. It further supports an inference of an "I don't care" attitude because AZIC identifies no investigative or other action that it took to advance the claim for the next forty-five days, other than sending its late Section 2362(a) letter.

On balance, a reasonable jury may conclude based upon the totality of the evidence that AZIC handled this claim with an "I don't care" attitude. Once AZIC received confirmation that Mr. Moyer was in fact electrocuted, it knew or reasonably should have known that the injury occurred in the course of his employment. Mr. Moyer earned a modest wage and suffered a significant work injury. The claims adjuster's initial indifference to Mr. Moyer's predicament, followed by extended claims inactivity after that initial indifference, will permit a reasonable inference justifying punitive damages.

## V.    CONCLUSION

When viewing the facts in the light most favorable to Mr. Moyer, genuine issues of material fact exist as to (1) whether AZIC acted in bad faith, and if it did act in bad faith, (2) whether it acted with reckless indifference towards Mr. Moyer's rights. As a result, AZIC's partial Motion for Summary Judgment must be **DENIED**.

**IT IS SO ORDERED**.

/s/Jeffrey J Clark
Judge

13